**In re FACTORY TIRE DISTRIBUTORS, INC., Debtor.**

**Douglas A. CAMPBELL, Trustee for Factory Tire Distributors, Inc., Plaintiff,**

**v.**

**Robert MACARTIE, John Wilson, Robert McCarthy, and Vilma Dowler, Defendants.**

**In re FACTORY TIRE DISTRIBUTORS, INC., Debtor.**

**Douglas A. CAMPBELL, Trustee for Factory Tire Distributors, Inc., Plaintiff,**

**v.**

**SOUTH HILLS TIRE SERVICE, INC., Robert F. Macartie, and John C. Wilson, Defendants.**

**In re Robert F. MACARTIE, a/k/a Robert F. Macartie, Sr., Debtor.**

**Douglas A. CAMPBELL, Trustee for Factory Tire Distributors, Inc., Plaintiff,**

**v.**

**Robert F. MACARTIE, a/k/a Robert F. Macartie, Sr., Defendant.**

**Bankruptcy Nos. 83–53, 85–720.**
**Adv. Nos. 84–0101, 84–208 and 85–654.**

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 26, 1986.

336

Douglas A. Campbell, Campbell & Levine, Pittsburgh, Pa., Trustee for Factory Tire Distributors, Inc.

Joseph J. Bernstein, Bernstein & Bernstein, P.C., Pittsburgh, Pa., for Robert F. Macartie, Sr.

Lawrence N. Ravick, Ravick, Beck & Henny, Pittsburgh, Pa., Trustee for South Hills Tire Service, Inc.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before this Court are three Adversary Proceedings relating to two bankruptcy cases, which were consolidated for the purposes of trial and decision. These actions allege fraudulent conveyances and/or preferential transfers by the Debtor corporation, Factory Tire Distributors, Inc, ("Factory Tire") and objections to discharge of the individual Debtor, Robert F. Macartie, who is also the principal of the Debtor corporation.[1] Based upon the testimony offered at hearing, the Court finds in favor of the Plaintiff in all three actions.

### I ADVERSARY NO. 84–208

This Complaint was brought by the Trustee in the Factory Tire case, alleging that fraudulent transfers occurred between Factory Tire and its sister corporation, South Hills Tire Service, Inc. ("South Hills Tire"). Specifically, the Trustee claims that while conducting his investigation of the case, he found a substantial inventory of goods had been consigned from Factory Tire to South Hills Tire which, at that time,

---

**1.** It should be noted that the individual debtor did not appear at this hearing objecting to his discharge. His counsel informed the Court that the debtor did not object to the hearing proceeding in his absence, nor would he later claim any due process violations.

continued to operate as a solvent corporation.[2]

The Trustee brought an action to enjoin South Hills Tire from disposing of the consigned inventory still in its possession, and requested an accounting of the merchandise sold, along with a return of the monies received from such sales.

Some portion of the consigned inventory was returned; in place of an accounting, the Trustee received a group of consistently numbered invoices, dated from October 18, 1982 through January 12, 1983. These invoices listed the inventory consigned by quantity and type, but included no prices, nor did there appear to be any writing to evidence the nature of this consignment agreement.

The Trustee enlisted the assistance of an accountant to construct records of the transfers from Factory Tire to South Hills Tire. The accountant testified that he determined the value of the inventory consigned and the inventory returned by checking the current price lists and vendor invoices of the various brands and types listed on the consignment invoices. The accountant determined that the value of the inventory consigned by Factory Tire to South Hills Tire was $279,489.44, while the value of the inventory returned was $83,396.41. The outstanding balance owed for inventory not returned is $196,093.03.

The Defendant challenged the accuracy of the accountant's figures, based upon the records supplied to the accountant. However, as the existing records were sparse in both quantity and quality, the accountant's inventory report was as accurate as possible.

The Trustee testified that Factory Tire never received any compensation for any of these consigned goods. Additionally, he noted that the invoices he received arrived only after his request for an accounting. Said invoices were consecutively numbered, and all bore the same handwriting, leading the Trustee, and this Court, to question whether they were prepared solely for the accounting, and not contemporaneously with the actual consignments.

Section 548 of the Bankruptcy Code states that:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation ...

The Code defines "transfer" in § 101(48) very broadly, to include:

every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property.

■ In the case at bar, it is clear that the consignment of goods by Factory Tire to South Hills Tire did constitute a transfer of an interest of the debtor in property. Further, as this case was commenced by an involuntary petition on January 11, 1983 and was converted to a voluntary Chapter 11 case on February 2, 1983, it is obvious that the transfers occurred within one year of the commencement of the case.

■ The debtor transferred property worth $279,489.44 to its sister corporation, receiving nothing in return, until after the case was converted to a Chapter 7 liquidation, and the appointed Trustee demanded an accounting. Even then, South Hills Tire returned only $83,396.41 worth of property, and no cash for the remaining $196,093.03 worth of inventory, no longer in its possession. Certainly, this informa-

---

**2.** South Hills Tire has since been brought into bankruptcy by an involuntary petition on April 4, 1985. An Order for Relief under Chapter 7 of the Bankruptcy Code was entered on May 6, 1985.

tion leads the Court to find that the Debtor received considerably less than a reasonably equivalent value in exchange for the transfer of the property.

 The invoices reflecting the transfers indicate that these transfers occurred between October 18, 1982 and January 12, 1983, inclusive. Factory Tire's creditors filed an involuntary petition in bankruptcy on January 11, 1983. The debtor did not object to this filing, by asserting that it was paying its bills as they became due; rather, the debtor converted the involuntary petition to a voluntary Chapter 11 reorganization. It is patently clear that the loss of $279,489.44 in merchandise resulted in Factory Tire's insolvency.

 Some courts have found a presumption of fraud when a transfer occurs between two corporations controlled by the same parties. *See In re F & C Services, Inc.,* 44 B.R. 863 (Bktcy.S.D.Fla.1984). However, we need not reach this point. As it is not necessary to show that the transfer was made with actual fraudulent intent, the Plaintiff has met his burden of proof in this case. *In re Bell & Beckwith,* 44 B.R. 656 (Bktcy.N.D.Ohio 1984). Therefore, this Court finds that a fraudulent transfer did occur in favor of South Hills Tire, and that South Hills Tire is indebted to Factory Tire in the sum of $196,093.03.

### II ADVERSARY NO. 84–101

 The Trustee brings this action on behalf of Factory Tire against Robert F. Macartie (Macartie), for recovery of a fraudulent transfer.[3] The pertinent language of § 548 is found in Section I of this Opinion.

The Debtor stipulates that he received $20,500.00 within ninety (90) days prior to the commencement of this proceeding. This satisfies the requirements of the:

 1) transfer of an interest of the debtor in property; and,

---

**3.** Actions were originally brought against other principals and/or employees of Factory Tire.

 2) transfer within one year of the filing of the petition.

Macartie's counsel argues that Factory Tire received a reasonably equivalent value in exchange for the transfer, likening said transfer to a salary for Macartie's services as a corporate officer.

The Trustee challenged this characterization, claiming that, as no taxes were withheld from this payment, and as it was given in a lump sum, the payment is more akin to a bonus.

A bonus is normally offered for an exemplary performance of one's duties. Given that the company was in bankruptcy shortly after this monetary distribution, the Court cannot rationalize the granting of what appears to be a bonus. Rather, as the Trustee opined, said transfer, along with the other "bonuses" and "business transactions", appears to be a raid on the corporate treasury, culminating in Factory Tire's insolvency.

This Court finds that the Trustee has shown the existence of a fraudulent transfer for the benefit of Robert F. Macartie, and that, therefore, Robert F. Macartie is indebted to Factory Tire in the sum of $20,500.00.

### III ADVERSARY NO. 85–654

The Trustee of Factory Tire brought these objections to the discharge of Robert F. Macartie, the principal owner of both Factory Tire and South Hills Tire. The Factory Tire Trustee raises his objections to discharge under he following subsections:

 1) The debtor, with intent to hinder, delay or defraud his creditors, transferred or concealed his property within one year prior to the filing of his petition, § 727(a)(2)(A);

 2) the debtor concealed, destroyed or failed to keep records of his financial condition or business transactions, without justification, § 727(a)(3);

---

Those actions were settled prior to this hearing.

3) the debtor failed to satisfactorily explain a significant loss of assets, § 727(a)(5); and,

4) the debtor committed the above named acts with respect to both Factory Tire and South Hills Tire prior to and during their respective bankruptcy cases; § 727(a)(7).

The facts upon which these assertions are made indicate the severity of this problem. In 1977 Macartie purchased a piece of property, upon which there stood a several-storied brick building. The purchase price was $245,000.00 and there existed no encumbrances. The first floor of this building was used by Robert's Family Restaurant, Inc., to operate a restaurant facility. Macartie was the controlling principal of Robert's Family Restaurant, Inc.

In 1984, subsequent to the commencement of the Factory Tire case, and soon after the Factory Tire Trustee filed an Adversary Proceeding against Macartie for breach of his fiduciary duty, Macartie transferred his ownership of the property in question to Robert's Family Restaurant, Inc. The property was sold for only $180,000.00, and simultaneously with the sale, a mortgage indebtedness was created which Robert's Family Restaurant, Inc. assumed. Of the $180,000.00 purchase price, Macartie acknowledges receiving only $47,000.00. No explanation has been offered as to the $133,000.00 balance. Macartie's counsel suggested that the $47,000.00 was paid to Mellon Bank on a guaranty made by Macartie; however, no substantive proof of such payment was offered at hearing.

After transferring the land and building to the restaurant corporation, Macartie transferred one half of the restaurant corporation's stock to his son for $50,000.00. Macartie admits to receiving said money, but offered no explanation for its whereabouts. Macartie's counsel again alluded to the Mellon Bank guaranty, but still offered no proof. Over a relatively short period of time, Macartie transferred the remaining one half of the stock to his daughter, as compensation for services she performed in connection with the restaurant.

Macartie owns a residence upon which there are five (5) encumbrances:

1) a first mortgage of approximately $90,000.00 held by Mellon Bank;

2) three judgments, the exact amount of which was not stated, held by gambling casinos; and,

3) a lien for $40,000.00 held by Macartie's son.

Macartie admits receiving the $40,000.00 from his son, but can offer no explanation as to its disappearance.

Macartie, as the principal of both Factory Tire and South Hills Tire, controlled the transfer of merchandise consigned to South Hills Tire by Factory Tire, as discussed in Section I of this Opinion. Factory Tire was not compensated for the merchandise transferred to South Hills Tire, causing Factory Tire to become insolvent.

South Hills Tire was brought into bankruptcy simultaneously with Macartie. The Factory Tire Trustee, obviously an interested party, attended the first meeting of creditors in the South Hills Tire case. At that meeting Macartie informed the Factory Tire Trustee that all of the records for South Hills Tire, as well as all of his personal records, were lost, when the building in which they were stored was sold. Macartie stated that the records were kept in boxes in which wheels had originally been received. These boxes were kept in a garage bay of the subsequently sold building. The only explanation for the loss of the records offered by Macartie was that in the course of the transfer of the building to the new owner, someone threw the boxes away.

South Hills Tire, the once solvent sister corporation of Factory Tire, and the recipient of almost $200,000.00 worth of goods for which it paid no consideration, is now a no-asset bankruptcy case. No inventory remains, and there has been no coherent explanation for this loss. Factory Tire's Trustee alluded to the fact that South Hills Tire had a number of "subsidiaries", which

originally were only operating names. He asserts that many of these "subsidiaries" were transferred to Macartie's son and his son's friends; and, he believes that the South Hills Tire assets were sold off for cash or transferred to these "subsidiaries". However, with the coincidental loss of all records for South Hills Tire, it is impossible to show any hard evidence.

 It is clear from these facts that Macartie engaged in a systematic divestiture of all his individual and corporate assets, in violation of § 727(a)(2) and (7). He concealed and/or transferred these assets, out of the reach of his creditors, while he was facing a suit for breach of his fiduciary duty as a corporate officer. Since it is obvious that a debtor will not voluntarily offer evidence of his fraudulent intent, the Court may deduce this intent from the facts and circumstances surrounding the case. *Matter of Brooks*, 58 B.R. 462 (Bktcy.W.D.Pa.1986).

An even more apparent affront to this Court has occurred in that Macartie allowed his personal and business records to disappear and/or be destroyed. Macartie operated businesses with annual sales of over $1,000,000.00; such a sophisticated business person cannot effectively lose all of his business records, and then expect his creditors, and this Court, to accept his word as to what financial transactions occurred.

Section 727(a)(3) is intended to give the creditors and the Trustee written evidence of the debtor's financial situation. Without any justifiable reason for the non-existence of such records, a discharge must be denied. *In re Grimes*, 58 B.R. 368 (Bktcy.W.D.La.1986).

Additionally, Macartie does not even offer explanations as to the whereabouts of cash in excess of $250,000.00, or of merchandise worth at least $200,000.00. Such an unexplained loss of assets, not just in connection with his personal affairs, but also in conjunction with his corporate capacities is completely unacceptable to this Court, and requires a denial of a discharge

pursuant to § 727(a)(5) and (7). *Lowe's of Virginia, Inc. v. Thomas*, 60 B.R. 418 (D.C. W.D.Va.1986); *In re Schermer*, 59 B.R. 924 (Bkrtcy.W.D.Ky.1986).

While the Bankruptcy Code is structured in such a way as to favor discharges, the Court cannot permit these protections to be utilized when the very heart of the Bankruptcy Code has been violated. *In re Greenwalt*, 48 B.R. 804 (D.Colo.1985).

Therefore, this Court will deny Macartie's discharge on four counts:

1) Hindering, delaying or defrauding creditors by concealing or transferring his assets within one year prior to the commencement of his case.

2) Allowing his personal and business records to be destroyed without justification.

3) Failing to satisfactorily explain a loss of significant assets.

4) Allowing these same three violations to occur, while in his capacity as principal of both Factory Tire and South Hills Tire.

An appropriate Order will be issued.