**In re James J. SULLIVAN and Francis T. DiMento, d/b/a DiMento & Sullivan, and Henry C. Ellis, Trustee, Plaintiffs,**

v.

**Francis P. TRACEY, Defendant.**

**Bankruptcy No. A86–1480–JNG.
Adv. No. 86–1480.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 2, 1987.

ceeding on December 22, 1986, following a section 341 meeting which was held on October 29, 1986 and a Rule 2004 examination of the Debtor on November 21, 1986. The Debtor was subjected to a second Rule 2004 examination on February 19, 1987, approximately three months prior to the trial that was conducted on May 18, 1987.

The plaintiffs assert that the Court should not grant the Debtor a discharge because of the Debtor's wrong-doing in connection with his bankruptcy case. Specifically, the plaintiffs allege that the Debtor, within twelve (12) months of filing his bankruptcy petition and during the pendency of the case, transferred or concealed property, including $9,201.33 in loan proceeds from the Cape Cod Five Cent Savings Bank, with the intent to hinder, delay or defraud creditors. *See* 11 U.S.C. § 727(a)(2)(A) and (B). Additionally, the plaintiffs aver that the Debtor (1) knowingly and fraudulently made a false oath or account in connection with his bankruptcy petition and during his Rule 2004 examinations, *see* 11 U.S.C. § 727(a)(4); (2) failed to explain losses and deficiencies of assets to meet liabilities, *see* 11 U.S.C. § 727(a)(5); and (3) concealed, destroyed or failed to keep and preserve financial information from which his financial condition could be ascertained, *see* 11 U.S.C. § 727(a)(3).

### FACTS

The Debtor is a retired individual with income derived exclusively from veteran's benefits in the amount of $1,962.56 per month and expenses of approximately $2,006.79 per month. At the May 18, 1987 trial, the Debtor revealed that he vacations in Florida for one month in March of every year, drives a 1985 Cadillac and keeps $4,000 to $5,000 in cash on hand. Indeed, his schedules show as much since the Debtor lists $4,000 in cash on hand and the automobile which had, at the time of the filing of the petition on October 7th, a book value of $14,125.

The schedules also indicate that the Debtor owns two pieces of real estate in Florida and four bank accounts, containing, in total, approximately $36,000. The Debt-

Michael Walsh, Choate, Hall & Stewart, Boston, Mass., for plaintiffs.

Joseph P. Foley, Boston, Mass., for defendant.

### MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

The matter before the Court is a five-count complaint filed by DiMento & Sullivan and Henry C. Ellis, Trustee (collectively the "plaintiffs"), seeking an order denying Francis P. Tracey (the "Debtor") a discharge. The Debtor filed a voluntary, non-business petition under Chapter 7 of the Bankruptcy Code on October 7, 1986. The plaintiffs commenced this adversary pro-

or chose not to list a 38% interest in property held in the name of Namelock Realty Trust, located in Cedarville, Massachusetts. At the trial, the Debtor testified that he had no contact of any nature with the land or its other owners since 1977. However, in an unrelated proceeding before a magistrate in the District Court, on April 15, 1985, the Debtor, while under oath, indicated that he owned an interest in the Massachusetts property.

The law firm of DiMento & Sullivan is a judgment creditor of the Debtor. The Debtor was convicted in May of 1981 of tax evasion and was incarcerated as a consequence. He retained the law firm of DiMento & Sullivan to represent him from 1977 through May of 1984 with respect to criminal matters, but failed to pay his legal bills. DiMento & Sullivan sued the Debtor in the Superior Court of Massachusetts in 1986 and obtained, in early July of 1986, a judgment in their favor against the Debtor in the approximate amount of $97,000 plus interest. DiMento & Sullivan is listed on the Debtor's schedules as his only unsecured creditor. The firm attached all goods, effects and credits of the Debtor in the possession of Cape Cod Five Cents Savings Bank (the "Bank"), pursuant to a state court trustee process. The Bank, accordingly, froze the Debtor's accounts (# 1–110359–5, # 88–102385–7, and # 79–101129–9) then totalling approximately $36,000, effective January 8, 1985.

The plaintiffs, pursuant to Count 4 of their complaint and 11 U.S.C. § 727(a)(5), emphasize the Debtor's inability to satisfactorily explain the disposition of cash withdrawn from his bank accounts between August 23, 1984, when James J. Sullivan of DiMento & Sullivan demanded the payment of outstanding legal fees, and January 8, 1985, when the Debtor's bank accounts were frozen. Between those two dates, the Debtor withdrew a total of $39,892.24 in cash from his accounts. Admittedly, the Debtor satisfactorily explained one withdrawal in the amount of $20,781.65 as having been used to purchase his Cadillac, leaving the withdrawal of $19,110.59 to be explained. With respect to the remainder, the Debtor testified that he spent $6,000 in December of 1984 on Christmas expenses. Additionally, the Debtor offered a handwritten list, marked as Defendant's Exhibit 1, as an explanation. The list contains the following information:

| | |
|---|---|
| Mass. Tax | $1,056 |
| Car ck ($20,782.56) | $ 781 |
| Overpayment—Bradford—Returned | $5,568 |
| Pro Inv. Consultants ($3500—11–83/1–85) | $ 367 |
| Car Insurance—Aetna | $ 504 |
| Contributions, Pine Street, G.L. Retarded | $ 200 |
| Lottery | $2,100 |
| Blanchard Press (3/1/84–9/6/85 $6,576.34) | $1,800 |
| F. McLaughlin, P.I. | $1,000 |
| TOTAL | $13,376 |

The plaintiffs criticize the Debtor's failure to document the alleged Christmas expenses and point out, correctly, that $2,641.60 in disbursements on Defendant's Exhibit 1 actually were paid by check not delivered to the recipient in cash. The plaintiffs also argue that the Debtor's ostensible expenditures of $2,100 on the lottery and $1,000 on a private investigator are implausible and uncorroborated, and that the payment of $5,568 to Bradford did not take place until March of 1985, not in late 1984 as the Debtor testified at one of his 2004 examinations.

The plaintiffs also are distressed by the Debtor's explanations with respect to the sum of $9,201.33 that he received on July 26, 1986 as the result of a loan from the Bank. Initially, the Debtor indicated that he used $3,000 of the proceeds to repay a loan from a personal friend, $3,000 to pay the attorney representing him in DiMento & Sullivan's collection suit, $1,500 to pay his present bankruptcy counsel, and $300 to pay for copies. Subsequently, the Debtor revised his accounting and offered a handwritten list, marked as Defendant's Exhibit 2, to explain the disposition of the loan proceeds. The list contains the following:

| | |
|---|---|
| Atty. Fee | $1,560 |
| Investigator | $1,900 |
| Xtra Colostomy Sup. | $ 316 |
| Tires | $ 440 |
| 2 Car Payments | $1,010 |

| General Expenses, Motions, Petitions, | |
|---|---|
| etc. | $1,200 |
| Lottery | $1,600 |
| Misc'l Clothes, Shoes, Dining | $ 500 |
| Entertaining (Dining) | $ 800 |

The plaintiffs again criticize the Debtor's explanation, highlighting the facts that the Debtor made no attempt to corroborate lottery, dining and entertaining expenses with receipts and that his explanation at trial varied from his explanation during his second Rule 2004 examination.

With respect to Counts One and Two of their complaint, which are predicated on section 727(a)(2)(A) and (B) of Title 11, the plaintiffs suggest that the Debtor's failure to account for the loan proceeds suggests that he concealed and/or transferred those funds either pre- or post-petition with fraudulent intent. Additionally, the plaintiffs point to the Debtor's failure to disclose his interest in the Cedarville, Massachusetts property.

Count Three of the plaintiffs' complaint is based on 11 U.S.C. § 727(a)(4)(A). According to the plaintiffs, the record of the case is replete with the Debtor's false oaths and accounts. In particular, the plaintiffs point to the Debtor's inconsistent testimony with respect to the following:

1. The amount of cash on hand as of various dates since the January 8, 1985 attachment;
2. The amount of the Debtor's cash on hand at the time of the filing of the petition;
3. The Debtor's possession of a checkbook;
4. The Debtor's use of the $9,201.33 in loan proceeds;
5. The Debtor's use of cash withdrawn from his accounts between August, 1984 and January, 1985;
6. The Debtor's ownership of real property.

Finally, the plaintiffs, pursuant to Count Five of their complaint and 11 U.S.C. § 727(a)(3), maintain that the Debtor's failure to produce both a copy of a life insurance policy, a potentially valuable asset of the Debtor's estate, and his checkbook, which the Debtor testified at one point that he did not have and at another point that he did have, warrant the denial of a discharge.

With respect to Counts One, Two and Four, the Debtor argues that he provided a clear and concise accounting of the disposition of the loan proceeds and answered all questions put to him with respect to his cash withdrawals. Additionally, the Debtor asserts that his disclosure of his 38% interest in real property in Massachusetts to his attorney and his lack of contact with the property or its owners absolves him of responsibility for failure to disclose it on Schedule B–1. Although the Debtor admits that he may have testified "in a somewhat hasty manner and without due caution" at his first Rule 2004 exam, he asserts that any deficiencies in his testimony were rectified. Indeed, he argues that since he was prepared to explain the disposition of assets, the plaintiffs, since they refused or declined to ask questions that would elicit the answer, are barred from seeking a denial of a discharge.

More particularly, the Debtor argues that any misstatements he may have made were not knowingly and fraudulently made. With respect to his cash withdrawals and disbursements, the Debtor points out that his difficulty in recalling events stemmed in part from the fact that he was called upon to testify about cash spent two years prior to the filing of his petition and that the plaintiffs "employed a subterfuge by a chronological line of questioning." The Debtor now offers yet another accounting based on his trial testimony as follows:

| | |
|---|---|
| Cash withdrawals: | $39,829.84 |
| Expenditures: | |
| Automobile Purchase | $20,700.00 |
| Government Fine | $10,000.00 |
| Bradford Trust Repayment | $ 5,568.00 |
| Auto Sales Tax | $ 781.00 |
| Blanchard Press | $ 1,800.00 |
| TOTAL: | $38,849.00 |

As is obvious from even a cursory comparison of this accounting and Defendant's Exhibit 1, several significant items listed in that exhibit, including *inter alia* lottery

expenses, and Massachusetts tax and private investigator expenditures, do not appear above. The Court, of course, wonders whether these expenditures, as well as the $6,000 expenditure for Christmas, were made or fabricated. The Debtor, however, continues to rely upon his Exhibit 2 to explain the disposition of the loan proceeds.

With respect to the plaintiffs' request to deny the Debtor a discharge for knowingly and fraudulently making false oaths, the Debtor primarily stands on his bankruptcy petition. However, the Debtor in his post-trial memoranda attempts to explain his testimony at his November, 1986 Rule 2004 examination that he had less than $5,000 in cash on hand on January 8, 1985, in view of the fact that he admitted that by late May of 1985 he paid $10,000 to the government as part of a $15,000 fine (the remaining $5,000 was borrowed from a personal friend) and $5,568 to repay Bradford Trust. The Debtor, "in retrospect," now says he more likely had in excess of $5,000. The Debtor, nevertheless, maintains that his testimony was given without reckless disregard for the truth.

Finally, with respect to the last count of the plaintiff's complaint, the Debtor says he made a substantial production of documents and willingly and truthfully provided information that would create a total picture of his finances.

## DISCUSSION

The Court is most concerned with Count Three of the plaintiff's complaint and is guided in considering that count, by the recent decision rendered by the Court of Appeals for the First Circuit in *In re Tully*, 818 F.2d 106 (1st Cir.1987), a case that has striking parallels to the instant case. In that case, the Court considered the question of whether evidence supported the Bankruptcy Court's determination that the Debtor exhibited reckless indifference to truth when he failed to disclose material information on his schedules.

In *Tully*, the Court noted the competing considerations inherent in section 727. On the one hand, "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor," *id.* at 110; and, on the other hand, "the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the Bankruptcy Code do not play fast and loose with their assets or with the reality of their affairs." *Id.* The Court elaborated on this point as follows:

> The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest, based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Mascolo*, 505 F.2d at 278. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. *See In re Tabibian*, 289 F.2d 793, 797 (2d Cir. 1961); *In re Shebel*, 54 B.R. at 202.

*In re Tully*, 818 F.2d at 110.

The Court of Appeals also indicated that the trustee has the burden of proof that the debtor knowingly and fraudulently made a false oath relating to a material fact. However, the Court noted " 'once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged.' " *Id. quoting Matter of Mascolo*, 505 F.2d 274, 276 (1st Cir.1974).

■ A false oath is material if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik*, 748 F.2d 616, 618 (11 Cir. 1984). Furthermore, for purposes of 11 U.S.C. § 727(a)(4)(A), reckless indifference to truth is equivalent to fraud. *In re Tully*, 818 F.2d at 111.

■ The Court, after a careful review of the trial transcript, is convinced that the Debtor is not entitled to a discharge under section 727 of the Bankruptcy Code. The

record abounds with examples of the Debtor's cavalier attitude toward the truth and his responsibilities as a Debtor under the Bankruptcy Code. The Court is particularly troubled by (1) the Debtor's failure to list the Cedarville property; (2) his inconsistant accounts of the cash withdrawn from his bank accounts; and (3) his inability to testify accurately as to the amount of cash on hand as of January 8, 1985 and the filing date.

As has been made abundantly clear, the Debtor failed to list his interest in the Cedarville property on his original schedules and never amended his schedules to reflect his ownership interest. Although the Debtor testified he walked away from the property and no longer considered his ownership interest as an asset, the Court does not consider this assessment to be the Debtor's call. Clearly, the Trustee is the individual charged with making such a determination. The Debtor's failure to list the property impaired the Trustee's ability to perform his statutorily imposed obligations at the expense of the creditors and, therefore, cannot be sanctioned. The fact that the Debtor told his attorney about the Cedarville property does not alter the Court's decision. See In re Tully, 818 F.2d at 111.

The Trustee and DiMento & Sullivan have engaged in a "laborious tug-of-war" to obtain the truth from the Debtor with respect to both his cash disbursements from the $39,892.24 in cash he withdrew from his bank accounts between August 23, 1984 and January 8, 1985, and the amount of cash he had on hand at various points in time. It is apparent to the Court that they have not been successful in that endeavor. Additionally, it is apparent to the Court that the Debtor has testified both at Rule 2004 examinations and during the trial with a reckless disregard for the truth. How many chances should the Debtor have to get his story straight? While the Court is sympathetic to the Debtor's argument that recollection of cash expenditures made over two years ago is difficult, the Debtor, after three tries (the two Rule 2004 examinations and the trial) has failed to explain satisfactorily how he spent the $19,110.59 remaining from his cash withdrawals after the purchase of his car and how much cash he had on hand on January 8, 1985 and October 7, 1986. Given that the Debtor's expenses exceed his income, that his bank accounts have been frozen since January 8, 1985, and that the Debtor admitted that he failed even to count his cash on hand when he filed his petition, the Court is compelled to find that the Debtor's various explainations of his cash expenditures were propounded with reckless disregard for the truth. Even assuming that the $19,110.59 was spent as the Debtor suggests in his post-trial memorandum (as compared to Defendant's Exhibit 1) and that the loan proceeds were spent in accordance with Defendant's Exhibit 2, the Debtor has indicated that he spent the following sizable sums that would severely impact his cash on hand: $6,000 on Christmas expenses, $1,056 on state taxes, $2,100 on the lottery, $1,000 to a private investigator, and $3,000 to his attorney in DiMento & Sullivan's state court action for a total of $13,156. The Debtor's testimony is so riddled with internal inconsistencies and "corrections" of previous "mistaken" testimony that it can only be described as a morass. In addition to the expenditures just noted, the Debtor testified (or his petition reflects) that he spent $1,000 for the rental of Florida vacation property, paid $3,000 to the friend who loaned him $5,000 for the payment of his fine and, in the year prior to the filing, lost $4,000 at Suffolk Downs, presumably an amount in addition to the monies he spent on the lottery. Again, assuming the Debtor was truthful when testifying about his expenditures, it is hard to conceive that he had $4,000 remaining as cash on hand at the time of filing, or that he had approximately $2,000 on hand after the payment of his fine in May of 1985. Thus, it would appear that either the Debtor's testimony as to expenditures was false or that his testimony as to the amount of cash on hand was false. In short, the numbers bandied about by the Debtor do not add up. Where as here, the plaintiffs have made out a prima facie case, the burden shifted to the

Debtor to substantiate his expenditures in some way. This he steadfastly failed and refused to do, relying instead on the erroneous legal proposition that the plaintiffs are barred from proceeding because they asked the Debtor the wrong questions or ones he was unprepared to answer in the sequence presented to him.

Because the Court has determined that the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A), the Court finds it unnecessary to rule on the remaining counts of the plaintiffs' complaint.[1] Accordingly, judgment is entered in favor of the plaintiffs and against the Debtor/defendant.

---

1. The Court notes that it has received several supplemental memoranda from the parties. However, this decision is not based upon the points raised by counsel in those memoranda.