**In re Jossee Patterson DIAS, Debtor.**

**WTHW INVESTMENT BUILDERS, Plaintiff,**

**v.**

**Jossee Patterson DIAS, Defendants.**

**Bankruptcy No. 35909–SAF–7.**
**Adv. No. 388–3147.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Nov. 9, 1988.

Mark Mueller, Dallas, Tex.

Bruce W. Long, Walker & Long, Dallas, Tex.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

WTHW Investment Builders complains that the debtor Jossee Patterson Dias should not be granted a discharge because, *inter alia,* he failed to keep certain recorded information from which his financial condition and business transactions might be ascertained, 11 U.S.C. § 727(a)(3), he transferred or concealed property within one year of the filing of his bankruptcy petition with intent to defraud his creditors, 11 U.S.C. § 727(a)(2), and because he knowingly and fraudulently made a false oath by his failure to disclose material assets on his schedules, 11 U.S.C. § 727(a)(4). The court tried the complaint on September 30, 1988. This memorandum opinion contains the court's findings of fact and con-

clusions of law required by Bankruptcy Rule 7052.

■ The Bankruptcy Code provides an honest debtor with a fresh start, free from the burden of past debts. *Brown v. Felsen*, 442 U.S. 127, 128, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1979). This fresh start has been described as the most extensive "since the seven year release described in the Old Testament." *Bailey v. Bailey (In re Bailey)*, 53 B.R. 732, 736 (Bankr.W.D.Ky.1985); *Fox v. Cohen (In re Cohen)*, 47 B.R. 871, 873 (Bankr.S.D.Fla.1985). To invoke these benefits, the Code requires the debtor to fully disclose his property and his financial affairs since "[a] discharge is a privilege granted the honest debtor and is not a right accorded all bankrupts." *In re Robinson*, 506 F.2d 1184, 1189 (2d Cir.1974). "Because of the volume of filings and the need for an expeditious and economical bankruptcy administration, the court, the trustee, and the creditors must be able to rely on the Schedules and Statement of Affairs, as having been prepared with scrupulous accuracy and honesty." *McNulty v. Sullaway (In re Sullaway)*, 66 B.R. 320, 322 (Bankr.D.Mass.1986). As the First Circuit in *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987), explained:

the very purpose of certain sections of the [code], like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the pro-

ceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

(citation omitted). Should a debtor fail to keep books and records from which the debtor's financial condition or business transaction might be ascertained, fraudulently transfer or conceal property, or knowingly and fraudulently make a false oath, the debtor may not receive a discharge. WTHW, as complaining party, must prove by clear and convincing evidence[1] that Dias is not entitled to a discharge. *See*, Bankruptcy Rule 4005. Denying discharge to a debtor is a serious matter not lightly taken by a court. *In re Burke*, 83 B.R. 716 (Bankr.D.N.D.1988).

### *Failure to Maintain Records*

■ WTHW contends that Dias has failed, without justification, to keep recorded information, including books and records, from which the financial condition or business transactions of J.P. Cleaners (the business owned and operated by Dias) could be ascertained. WTHW asserts that his failure to maintain records should result in a denial of a discharge to Dias under 11 U.S.C. § 727(a)(3). WTHW has met its burden of proof.

---

1. Under the Bankruptcy Act of 1898, the general rule was that the creditor had to prove its case by a preponderance of the evidence. *Farmers Co-Operative Association of Talmage, Kansas v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *In re Mascolo*, 505 F.2d 274, 276 (1st Cir.1974); *Robinson*, 506 F.2d at 1187; *Union Bank v. Blum*, 460 F.2d 197, 200–01 (9th Cir.1972). Relying on these cases, a number of courts have applied a preponderance of the evidence standard to § 727 cases. *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 53 (Bankr.D.Kan.1987); *Founders Bank & Trust Co. v. Swift (In re Swift)*, 72 B.R. 563, 565 (Bankr.W.D.Okla.1987); *Francis v. Riso (In re Riso)*, 74 B.R. 750, 757 (Bankr.D.N.H.1987); *Conti–Commodity Services, Inc. v. Clausen (In re*

*Clausen)*, 44 B.R. 41, 45 (Bankr.D.Minn.1984); *Gabrielli v. Shults (In re Shults)*, 28 B.R. 395, 396 (Bankr. 9th Cir.1983). Other courts apply a clear and convincing evidence standard. *Booth v. Booth (In re Booth)*, 70 B.R. 391, 394 (Bankr.D.Colo.1987); *Sprague, Thall & Albert v. Woerner (In re Woerner)*, 66 B.R. 964, 972 (Bankr.E.D.Pa.1986). Because the evidence presented by WTHW satisfies both standards, the court will apply the more stringent standard. The Fourth Circuit recently decided that the standard of proof necessary to establish an exception to the dischargeability of debt under § 523 was a preponderance of the evidence. *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988).

Dias owned and/or operated the cleaning establishment known as J.P. Cleaners prior to and after the filing of his bankruptcy petition. Dias estimates his annual income from the cleaning business to be negligible. Dias did not maintain separate accounts for his business and personal affairs and uses the J.P. Cleaners' account as a personal as well as a business account. The only financial records Dias has maintained are the cleaning ticket receipts, bank deposit slips, cancelled checks and other miscellaneous documents, including some cash register tapes.

Dias kept no ledger of billings, receipts, expenses or accounts payable. A two month summary had to be prepared by the accountant hired by WTHW. The summary ledger of receipts prepared by WTHW's accountant appear to match the deposits made in the J.P. Cleaners account for the time period reviewed. Dias testified that he and his wife frequently withdrew cash from the cash register to pay household expenses, keeping no record of these withdrawals. Additionally, Dias has not filed a income tax return since 1985.

■ Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands. *In re Esposito*, 44 B.R. 817 (Bankr. S.D.N.Y.1984). The creditors are entitled to written evidence of the debtor's financial situation and past transactions. *Broad National Bank v. Kadison*, 26 B.R. 1015 (D.N.J.1983). Maintenance of such records is a prerequisite to granting a discharge in bankruptcy, *Kadison, supra; see also, In re Borron*, 29 B.R. 122 (Bankr.W.D.Mo. 1983). Unless the debtor justifies his failure to keep records, a discharge should not be granted. *In re McNamara*, 89 B.R. 648, 653 (Bankr.N.D.Ohio 1988); *In re Ellison*, 34 B.R. 120 (Bankr.M.D.Ga.1983). The debtor's records need not be perfect, but must be kept in an "intelligent fashion." *In re Kottwitz*, 42 B.R. 566 (Bankr. W.D.Mo.1984); *see also, In re McNamara*,

89 B.R. at 653. The records must at least reasonably allow for reconstruction of the debtor's financial condition to meet the requirements of the Bankruptcy Code. *In re Belk*, 44 B.R. 793 (Bankr.S.D.Fla.1984).

■ Dias has failed to meet the requirement of the Bankruptcy Code in this regard. *See, e.g., In re Schultz*, 71 B.R. 711 (Bankr.E.D.Pa.1987). The debtor not only failed to keep any type of general ledger, employee record or separate record of costs, he also failed to keep tax records, records of cash register withdrawals, or records of expenses. He kept no record of any cost control. Yet Dias was well educated and capable of maintaining financial records. Dias testified that he did not have time to maintain adequate records because the day to day affairs of his business required his full attention and consumed all of his time. The demands of operating a business do not excuse a debtor from keeping basic financial records.

Dias contends that his financial condition can be ascertained from the cleaning ticket receipts, cancelled checks, bank deposit slips and other miscellaneous documents, including the cash register tapes. This court had much difficulty in making any sense of these documents, when produced.[2]

■ The court in determining whether the books and records produced are sufficient to trace the debtor's financial history has reasonably wide discretion. *In re Parker*, 85 B.R. 384, 388 (Bankr.E.D.Va.1988), citing, *In re Kottwitz*, 42 B.R. 566, 569 (Bankr.W.D.Mo.1984), and *Broad Nat'l Bank v. Kadison*, 26 B.R. 1015, 1017 (Bankr.D.N.J.1983). To obtain a discharge under the Bankruptcy Code, Dias is not required to maintain books and ledgers that would pass muster under generally accepted accounting principles. However, Dias is obligated to maintain minimal financial records which would provide creditors with basic information regarding the profitability of his cleaning business. *See, Matter of Oesterle*, 651 F.2d 401 (5th Cir.1981). Dias argues that a creditor could sift

---

**2.** Dias produced boxes of cleaning ticket receipts, cancelled checks and other documents which were spread out on the floor of the courtroom but which were not marked as exhibits or entered into evidence.

through the documents he has retained and compile sufficient information for summary records. But a creditor should not have to review a voluminous amount of documentation to compile summary records. Since the debtor obtains the "fresh start" with a discharge of debts, the debtor has the burden under § 727(a)(3) to maintain and produce adequate financial records. To hold otherwise would encourage the retention of voluminous receipts (in lieu of ledger books) to thwart creditors from determining the financial condition of the debtor. Dias has had the better part of a year to prepare summary records prior to the commencement of this trial to determine dischargeability. Dias has failed to keep basic records that would provide his creditors with the written evidence of his financial affairs to which they are entitled.

The next inquiry which must be made under Section 727(a)(3) is whether the debtor's failure to keep records can be excused. The debtor could not sufficiently explain why he failed to keep records. He testified that he did not have time to maintain sufficient records. As stated previously, the demands of operating a business do not excuse the keeping of basic financial records. Dias was well educated and capable of maintaining business records. He was familiar with accounting procedures and record-keeping techniques and, on occasion, had prepared sufficient books and records. Hence, the court concludes that Dias' failure to maintain adequate records is not justified under all the circumstances of this case. By violating § 727(a)(3), Dias is not entitled to a discharge.

### *False Oath*

█ WTHW also contends that Dias violated § 727(a)(4). To deny Dias a discharge under § 727(a)(4), WTHW must show that Dias knowingly and fraudulently made a false oath with respect to a material fact. *Williamson v. Fireman's Fund Insurance Co.*, 828 F.2d 249, 251 (4th Cir. 1987); *Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir.1987).

WTHW alleges that Dias knowingly and fraudulently failed to disclose in his schedules and statement of affairs that he (i) owned and operated J.P. Cleaners as well as the assets used in the operation of the business; (ii) sold certain art objects to his brother-in-law within the year prior to the bankruptcy filing; and (iii) had an obligation from his sister to pay for certain real property located in India (as well as his ownership in the property itself).[3] Dias testified that J.P. Cleaners and associated assets were valueless and in any event they were included on amended schedules filed by Dias. Dias also testified that he sold the art work in question, ivory tusks, to his brother-in-law for $24,000 and paid the proceeds to his creditors. Dias further testified that his sister revoked her offer to purchase his property interest in the India real property after the bankruptcy filing. Dias additionally testified that his interest in the real property in India was contingent upon a bequest to be given by his mother.

█ In his schedule of assets, Dias did not disclose that he owned and operated the business known as J.P. Cleaners. Dias did however style the bankruptcy petition and schedules with the name of J.P. Cleaners as a "d/b/a" and subsequently amended his schedules to show J.P. Cleaners as an asset with a "nominal value at best." Because the petition and schedules place creditors on notice that Dias filed d/b/a J.P. Cleaners, his failure to specifically schedule the business and assets, even if valueless, did not constitute fraud against the trustee or the debtor's creditors.

At the time Dias filed his petition, he expected $30,000 from his sister for the purchase of his real property interests in India. Dias neither disclosed that obligation nor his property interest. If ultimately bequeathed by his mother, Dias would inherit real property in India formerly belonging to his deceased father. Unhappy with her life in Canada, his sister offered Dias $30,000 for that property interest. She intended to return to India and live on that land. Dias accepted that ver-

---

**3.** An omission from the sworn schedules may constitute a false oath. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 n. 3 (11th Cir. 1984).

bal offer. He listed the $30,000 obligation on a pre-petition financial statement. As late as his Rule 2004 examination, he still expected his sister to purchase the land. Although the sister subsequently decided to stay in Canada and not purchase the property, at the time Dias filed his schedule and statements he expected but did not disclose the $30,000 obligation.

■■■■ The property interest, until vested, may have been worthless. The promise by the sister may have been an unenforceable obligation. The court must nevertheless look to the requirements of the schedules and statement of affairs. The schedules of assets ask for information on all property. The questions posed on the schedules are meant to be inclusive of all legal and equitable interests held by the debtor as of the commencement of the bankruptcy case consistent with § 541(a)(1). *See, In re Burke,* 83 B.R. 716, 721 (Bankr.D.N.D.1988). A remainder interest in real property is "property of the estate" regardless of whether such interest was contingent or vested. *See, e.g., In re Hoblit,* 89 B.R. 756 (Bankr.C.D.Ill.1986). A debtor cannot pick and choose which questions to answer or whether to answer them completely. *In re Burke,* 83 B.R. at 721. Dias had a duty to disclose whatever ownership interest in property he held. A debtor must consider the questions carefully and answer them completely and accurately. *In re Burke,* 83 B.R. at 721, *citing, In re Gugliada,* 20 B.R. 524, 528 (Bankr.S.D. N.Y.1982); *see also, In re Montgomery,* 86 B.R. 948 (Bankr.N.D.Ind.1988) (where failure to list remainder interest resulted in denial of discharge).

■■■ Standing alone, Dias knowing failure to disclose his property interests in India, however contingent, and his expectation of a sale to his sister, however unenforceable but which he anticipated would be consummated at the time he filed his petition, would not support a finding of fraudulent intent. However, Dias also failed to disclose a sale of ivory for less than full value to his brother-in-law three months prior to the filing of his bankruptcy petition.

Dias bought the ivory in Africa for $5,000 prior to the United States ivory embargo. He speculated that the market forces of supply and demand after the embargo would appreciate the value of the ivory. In pre-petition financial statements he estimated the value of the ivory to be $100,000. Yet he sold the ivory to his brother-in-law for $24,000 three months before bankruptcy. He did not disclose the transfer in his schedules and statements.

Dias' failure to list the sale of the ivory to his brother-in-law on his schedules constitutes a material omission. A false oath is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik,* 748 F.2d at 618. The sale of the ivory tusks is a material transaction that should have been disclosed. *See, First National Bank of Mason City, Iowa v. Cook (In re Cook),* 40 B.R. 903, 907 n. 2 (Bankr.N.D.Iowa 1984); *Randolph v. Somerville (In re Somerville),* 73 B.R. 826, 835 (Bankr.E.D.Pa. 1987).

To determine whether Dias fraudulently made the false oath of the material fact, the court considers whether Dias' actions " 'appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve [him].' " *Caspers v. Van Horne (In re Horne),* 823 F.2d 1285, 1288 (8th Cir.1987) (quoting *In re Hunt,* 30 B.R. 425, 441 (M.D.Tenn.1983)). Dias was obligated to carefully consider the questions contained in the schedules and answer them completely and accurately. *In re Gugliada,* 20 B.R. at 528; *Economy Brick Sales, Inc. v. Gonday (In re Gonday),* 27 B.R. 428, 433 (Bankr.M.D.La. 1983). The evidence presented by WTHW shows that Dias acted with a reckless disregard for the serious nature of the information sought and the necessary attention to detail and accuracy required by the Code. This reckless indifference to the truth preempts discharge under § 727(a)(4). *Tully,* 818 F.2d at 112; *Sullivan v. Tracey,* 76 B.R. 876, 880 (Bankr.D.Mass.1987); *Dorio v. Kreisler–Borg Construction Co. (In*

*re Dorio),* 407 F.2d 1330, 1331 (2d Cir. 1969); *Booth,* 70 B.R. at 395; *Schuholz v. Zahneis (In re Zahneis),* 75 B.R. 201, 203 (Bankr.S.D.Ohio 1987); *Butler v. Ingle (In re Ingle),* 70 B.R. 979, 983 (Bankr.E.D.N.C. 1987).

A month after the bankruptcy filing, in a Rule 2004 examination taken by WTHW, Dias acknowledged the disposition of the ivory. Dias testified at the trial that he used the proceeds from the sale of the ivory to pay some creditors. In the 2004 examination Dias stated that he felt the ivory was worth more than what his brother-in-law paid him. But at trial he testified that he got no other offers except $5,000 from his bank. However, he did not market the ivory or publicly offer the ivory for sale.

The non-disclosure of the sale of ivory to his brother-in-law within three months of bankruptcy, when considered in light of the totality of facts, requires a finding that Dias intended to defraud his creditors. He valued the ivory as part of a financial statement at $100,000 yet sold the ivory to a relative for $24,000. As late as his 2004 examination he still believed the ivory to be worth more than $24,000. Although he offered to sell the ivory to his bank, he never marketed the ivory and thus never determined what a non-insider willing buyer would pay. Even though he paid the $24,000 to creditors, since he sold to his brother-in-law believing the property to be worth more, and then failed to disclose the transaction, he kept assets from his creditors. He failed to disclose that sale to a relative at the same time he failed to disclose his then pending sale of an asset to another relative for $30,000. This false oath amounts to an intent to defraud creditors.

The knowing and fraudulent false oath in the statement of financial affairs and schedule of assets cannot be subsequently remedied by amended schedules or testimony at a Bankruptcy Rule 2004 examination or an adversary proceeding. *In re Tabibian,* 289 F.2d 793, 797 (2d Cir. 1961); *Zangen v. Glickman (In re Glickman),* 64 B.R. 616, 618 (Bankr.S.D.Fla.

1986); *LaVangie v. Mazzola (In re Mazzola),* 4 B.R. 179, 183 n. 2 (Bankr.D.Mass. 1980); *Allard v. Hussan (In re Hussan),* 56 B.R. 288, 293 (Bankr.E.D.Mich.1985). Although a later disclosure may be evidence of innocent intent, no inference is warranted here since Dias' disclosure cannot be considered voluntary at this stage of the proceedings. *See, In re Shebel,* 54 B.R. 199, 204 (Bankr.D.Vt.1985).

### Transfer or Concealment of Property

WTHW also contends that Dias is not entitled to a discharge pursuant to § 727(a)(2) because he transferred or concealed his assets, within one year of filing his bankruptcy petition, to defraud creditors. Section 727(a)(2) denies a discharge to a debtor who, within one year before his petition is filed, transfers with actual intent to hinder, delay, or defraud creditors, property owned by him that would be property of the estate. *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342–43 (9th Cir.1986).

"Because a debtor is unlikely to testify directly that his intent was fraudulent, [a] court may deduce fraudulent intent from all the facts and circumstances of a case." *Devers v. Bank of Sheridan, Montand (In re Devers),* 759 F.2d 751, 754 (9th Cir.1985). To determine whether the debtor has acted with the requisite intent, the courts have identified certain "badges" of fraud. *See, Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582–83 (2d Cir.1983); *Booth,* 70 B.R. at 395; *Giel v. Brooks (In re Brooks),* 58 B.R. 462, 465–66 (Bankr.W.D.Pa.1986). In determining whether a transfer by a debtor was made with intent to defraud, the courts have looked to (1) the lack or inadequacy of consideration received by the debtor for the transfer; (2) the relationship between the debtor and the transferee; (3) the debtor's financial position before and after the transfer; and (4) the chronology of events. *Kaiser,* 722 F.2d at 1582–83. In addition, "[t]he transfer of property by the debtor to [a relative] while insolvent, [is a] ...," classic badge of fraud. *Id.* at 1583.

■ Under transfers of property, question 12b asked whether he "made any other transfer ... or any other disposition of ... personal property during the year immediately preceding the filing of the original petition herein?" Dias answered "No." Dias knew that he transferred property to his brother-in-law. Dias concealed the transfer of his ivory on his statements and schedules from the trustee and the creditors.[4] As discussed in the preceding section, the non-disclosed sale to a relative for less than what Dias believed to be the value of the property within three months of bankruptcy constitutes an intent to defraud. That he applied the proceeds to some debts mitigates but does not negate an intent to defraud when he believed the property to have been worth more than the hidden sale to a relative generated and when he never sought to determine the actual market by a public offer of sale. By knowingly not disclosing this transfer, Dias has fraudulently concealed property from the trustee and his creditors preempting his discharge under § 727(a)(2)(A).

### Conclusion

Exceptions to discharge are construed narrowly against the creditor and in favor of the debtor, *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 588 (5th Cir.1987), and "[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir.1934). "While the Bankruptcy Code is structured in such a way as to favor discharges, the Court cannot permit these protections to be utilized when the very heart of the Bankruptcy Code has been violated." *Campbell v. Macartie (In re Factory Tire Distributors, Inc.)*, 64 B.R. 335, 341 (Bankr.W.D.Pa.1986).

This court does not lightly deny a discharge. But here Dias cannot receive that discharge. He has unjustifiably failed to keep basic business records that would provide his creditors with the written evidence of his financial affairs to which they are entitled. He did not prepare his schedules and statements with scrupulous accuracy and honesty. He did not provide complete, truthful and reliable information at the outset of the proceedings. He sold property to a relative for considerably less than what he believed it to be worth and hid that from his creditors by filing a false oath. When he filed his false oath, he expected $30,000 as a purchase price for another non-disclosed asset but did not include that in his schedules and statements. His creditors had to drag this information out at a Rule 2004 examination and in this adversary proceeding. The creditors still do not have basic business records that can be reviewed in a coherent fashion. Standing alone, the court might excuse one of these failures. But, in totality, the court must deny the discharge.

Based on the findings of facts and conclusions of law contained herein,

IT IS ORDERED that Jossee Patterson Dias shall not be granted a discharge.

---

**4.** Omission of property from schedules may be both a false oath and a concealment. *Strunk*, 671 F.2d at 395; *Hadley*, 70 B.R. at 54; *Pohl*

*Construction Co. v. Waddle (In re Waddle)*, 29 B.R. 100, 103 (Bankr.W.D.Ky.1983).