In re Michael J. KRICH, Debtor.

BRITTON MOTOR SERVICE,
INC., Plaintiff,

v.

Michael J. KRICH, Defendant.

Bankruptcy No. 87 B 00567.
Adv. No. 87 A 00843.

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 30, 1988.

Edgar A. Blumenfeld, Ltd., Chicago, Ill., for defendant Michael J. Krich.

Robert J. Walinski, Ltd., Chicago, Ill., for plaintiff Britton Motor Service, Inc.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This adversary proceeding comes before the Court on the complaint of Britton Mo-

tor Service, Inc. ("Britton") objecting to the discharge of debtor/defendant Michael J. Krich ("Krich") for violations of 11 U.S.C. § 727(a)(2), (a)(4)(A).

For the reasons set forth below, the Court having considered all the pleadings, and the evidence adduced at trial, does hereby sustain Britton's objections to discharge against Krich and hereby denies discharge to Krich.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## II. FACTS AND BACKGROUND

Krich originally filed a Chapter 13 petition on January 13, 1987. The case was dismissed on March 26, 1987, for Krich's unreasonable delay. On April 23, 1987, the dismissal was vacated and the Chapter 13 proceeding was converted to a Chapter 7 case.

On August 24, 1987, Britton filed an adversary proceeding against Krich objecting to his discharge. Notwithstanding the objections, on September 3, 1987, an Order of Discharge was issued which this Court assumes was by administrative oversight. Britton is a judgment creditor holding a claim in the amount of $25,993.43. Krich is a self-employed transportation broker for steel freight.

Britton alleged that Krich, subsequent to the filing of the Chapter 13 petition, converted business assets and income of Blue Moon Transportation Company, Inc. ("Blue Moon"), an Illinois corporation, of which he was the sole stockholder. Britton claimed that Krich failed to disclose, in his original schedules and statement of affairs, his ownership interest therein. Britton also alleged that Krich concealed his interest in certain bank accounts at the Palwaukee State Bank ("Palwaukee") set up by his nondebtor spouse into which funds of the estate consisting of the debtor's paychecks

were deposited. The second such account was opened post-petition in the name of Blue Moon Transportation Company. This sole proprietorship, with a confusingly similar name to the corporation, was established by Krich after the Chapter 13 petition was dismissed. Moreover, Britton alleged that certain accounts receivable generated from Krich's activities as a broker were not disclosed at the time the case was initially filed or at the time it was converted to a Chapter 7 proceeding. Furthermore, Britton alleged that Krich failed to disclose his interest in certain household goods including a television set, computer and furniture and that Blue Moon had made payments on a motor vehicle titled in Krich's name.

Britton asserts that such acts and omissions by Krich constitute fraudulent concealment and false oaths thus barring his discharge under Section 727(a)(2), (a)(4)(A) of the Bankruptcy Code. Krich denied that any concealment of his interest in the Blue Moon stock or other assets was fraudulent but that same were subsequently disclosed in amendments to the schedules. Krich denied the remaining substantive allegations of the complaint.

The case was tried on June 1, 1988. By leave of Court, counsel for both parties were given leave to submit written closing arguments and post-trial memoranda of law by or before June 15, 1988. To date, only counsel for Britton has submitted same. Because of the press of the Court's calendar, the Court will not delay its decision to await any late-filed pleadings by Krich's counsel.

## III. TESTIMONY AND EVIDENCE ADUCED AT TRIAL

The principal witness testifying at trial was Krich, who was initially called as an adverse witness by Britton. As a self-employed transportation broker, Krich's business is, and at all relevant times was, focused on contacting sellers of steel freight and making arrangements with truckers for hauling the product to various customers. Blue Moon's corporate bank account

at the Mount Prospect State Bank ("Mount Prospect") was garnished by Britton in December 1986, prompting the filing of his petition. Krich identified his signature affixed to the schedules of assets and liabilities and statement of affairs. He recalled some of the examination conducted of him at a first meeting of creditors on July 9, 1987, but did not recall many specific questions propounded him. Krich admitted he now operates Blue Moon as a sole proprietorship since May 1987 but prior thereto operated the business as an Illinois corporation from the same address and telephone number.

At the time the Chapter 13 petition was filed in January 1987, Blue Moon had some accrued but unpaid accounts receivable from E.W. Wiley which were not disclosed. Blue Moon also owned a few items of equipment and furniture besides the Mount Prospect bank account. After that account at Mount Prospect was frozen incidental to Britton's pre-petition state court garnishment proceeding, Krich's spouse opened a personal account at Palwaukee in her name alone. She deposited Krich's paychecks into the Palwaukee account funded with receipts from Krich's ongoing business from approximately December 1986 through sometime in 1987. Krich admitted that the family living expenses were paid from this Palwaukee account.

Krich had contracts with E.W. Wiley, both through Blue Moon as a corporation and as a sole proprietor. Although he notified E.W. Wiley of the change of form of business, he did not notify anyone else. Krich's wife opened another account in April 1987 at Palwaukee in the name of Blue Moon, the proprietorship.

Neither Palwaukee account was disclosed or scheduled during the Chapter 13 proceedings or in the superceding Chapter 7 case. Krich further admitted that during his marriage he had acquired some personal property, including a television and a computer and that none of these personal assets were listed in his Chapter 13 schedules of assets.

In defense, Krich admitted that although the original schedules failed to disclose the ownership of the Blue Moon stock and its unpaid receivables, such omissions were inadvertent. He claimed that the stock in Blue Moon was not listed as an asset because it was not considered to be of any value. Moreover, Krich's employment by and relationship with Blue Moon was disclosed on page two, question thirteen of the statement of affairs. Besides the Mount Prospect account, the only other corporate assets were a typewriter, desk, some chairs, filing cabinet, stool and a couple of calculators. Krich testified that due to delinquent assessed taxes, Blue Moon was virtually insolvent and that after payment of current operational bills there was insufficient income earned by Blue Moon to pay bills.

Krich further testified that he never actually received his payroll checks from Blue Moon. The checks were made out by his wife and he merely endorsed same which she thereafter deposited in her Palwaukee account and used to pay family living expenses. Krich further stated that there were no substantial household goods purchased by he and his wife after their marriage other than a television. She brought most of their furniture to the marriage according to Krich. The computer equipment was not scheduled because it was allegedly subject to a security interest or lien from the vendor in an amount greater than its value. Krich also testified concerning a certain Dodge van which was carried on Blue Moon's books but which was titled in his individual name. Neither the original schedules filed in January 1987 nor the amendments filed in July 1987 disclosed Krich's interests in either of the Palwaukee accounts, the Blue Moon receivables, or either of the contracts with E.W. Wiley.

## IV. SUMMARY OF THE ARGUMENTS

In closing arguments, counsel for Britton contended that the objections had been proven by the evidence. Krich concealed his ownership of the Blue Moon stock, its tangible assets and its receivables. Krich did not disclose ownership of same until July when the amendments were filed. In

the interim, Blue Moon's assets were collected and disposed of by Krich without court authority or approval. Blue Moon was effectively bled dry. Secondly, Britton's counsel claimed that both of the Palwaukee accounts, created pre- and post-petition, were concealed from the creditors and were funded by estate assets consisting of Krich's wages derived from Blue Moon's receivables. Thirdly, Krich's interest in household goods, specifically the television set and computer, were not disclosed at the time the case was filed but only admitted after the Chapter 7 first meeting of creditors. Therefore, Britton's counsel claimed that Krich violated section 727(a)(2) for concealing assets of the estate. Moreover, Britton alleged that section 727(a)(4)(A) was violated by Krich's converting income of the estate, his nondisclosures and his false oaths on the sworn schedules.

Krich's counsel, on the other hand, contended that sufficient disclosure was made in the original schedules of Krich's employment with Blue Moon and that there was no intentional concealment of his stock ownership. Further, he contended that the first Palwaukee account was opened to avoid the garnishment proceedings instituted by Britton. That account was in Krich's wife's name alone to whom Krich gave his salary check to deposit for family living expenses. He further contended that virtually all household goods of the family were owned by the nondebtor spouse except for the television set and the computer system, the latter of which was subject to liens in favor of a secured creditor. Neither had substantial value and for those reasons, no disclosure thereof was made on the schedules.

## V. DISCUSSION

The burden of proof on objections to discharge is on Britton as prescribed by Federal Rule of Bankruptcy Procedure 4005. The objections invoke 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), and (a)(4)(A) which provide as follows:

*Discharge*

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of filing of the petition; or

(B) property of the estate after the date of the filing of the petition;

. . . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made false oath or account; ...

11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(4)(A).

### A. *Section 727(a)(2)(A), (a)(2)(B)*

Section 727(a)(2) provides that a debtor shall not be granted a discharge if he has transferred or concealed his property, with the intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody thereof. The prohibition under section 727(a)(2)(A) covers the period of a year before the petition is filed. Section 727(a)(2)(B) prohibits the same acts involving property of the debtor's estate after the filing of the petition. Britton claims Krich violated these provisions by concealing his interests in the Blue Moon stock. Britton contends Krich concealed and converted the earnings he collected from Blue Moon out of receivables owed and paid by E.W. Wiley and presumably other freight haulers. Britton further argues that Krich wrongfully concealed the computer, television set and payments on his van.

 Actual fraudulent intent is required for purposes of section 727(a)(2) which can be inferred from extrinsic evidence. In *In re White*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986) the court noted that because a debtor is "unlikely to directly testify that his intent was fraudulent, the

court may deduce fraudulent intent from all the facts and circumstances of a case." 63 B.R. 742, 744. Omissions of assets by Krich from his schedules and his failure to promptly amend his schedules to reflect such omitted assets is indicative of knowing and fraudulent conduct constituting at the least a reckless indifference to the truth which is the equivalent of fraud for purposes of denying discharge. As the court stated in *In re Chambers*, 36 B.R. 791, 793 (Bankr.W.D.Ky.1984):

> If debtor was uncertain as to the need of inclusion of these accounts, it was incumbent that he disclose the transactions for such legal interpretations as may be warranted.

36 B.R. 791, 793.

■ It is not necessary to show harm to creditors because of the concealment or that the property concealed was even valuable, if there was intent to defraud. As noted in *In re Steinberg*, 4 B.R. 593, 597 (Bankr.D.Mass.1980):

> Courts will not measure the dishonesty of a bankrupt, once that be shown; ....
> The law forbids all efforts to put property beyond the reach of creditors, no matter what its value; ....

4 B.R. 593, 597.

The Court has carefully considered the testimony and exhibits and is of the opinion that Krich's explanations are insufficient. The Court finds that the evidence viewed as a whole clearly and convincingly shows a violation of section 727(a)(2)(A) and (a)(2)(B) and that Krich acted both pre- and post-petition with the requisite fraudulent intent and transferred and concealed not only his property but also property of the estate.

### B. Section 727(a)(4)(A)

A debtor will be denied a discharge under Section 727(a)(4)(A) of the Bankruptcy Code when he knowingly and fraudulently makes a false oath or account in connection with the case. Although Krich's original statement of affairs indicated his employment and some business relationship with Blue Moon, his personal property schedules did not initially list his ownership of stock in that closely-held corporation. Moreover, neither the original schedules nor the amendments referenced the disposition of the income deposited into nor the existence of either Palwaukee account into which debtor's income had been diverted and deposited by his nondebtor spouse to effectively shield its existence from the trustee and estate creditors. Furthermore, the schedules did not disclose the accounts receivable collected by Krich both in his capacity as president of Blue Moon and his subsequent capacity as a sole proprietor of Blue Moon. Lastly, the schedules never disclosed all of the personal property Krich admitted he owned, namely the computer and television set.

Filing of false schedules with material omissions or misrepresentations with an intent to mislead creditors and the trustee as to a debtor's actual financial condition constitutes a false oath prohibited under section 727(a)(4)(A). *In re McDonald*, 16 B.R. 621, 623 (Bankr.S.D.Fla.1981). The subject matter of a false oath is material and sufficient to bar discharge, "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property." *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984).

■ Section 727(a)(4)(A) ensures that debtors provide reliable information to those with an interest in the administration of the estate. *In re Ingle*, 70 B.R. 979, 983 (Bankr.E.D.N.C.1987). Similar to the requirements of section 727(a)(2), the requisite intent under section 727(a)(4)(A) may be inferred from circumstantial evidence. The Court can infer from continuing concealment and nondisclosure the requisite fraudulent intent. Reckless indifference to the truth is sufficient. In *Ingle*, the Court held that the debtor's failure to list a sixteen-foot boat on his schedule of assets was a fraudulent concealment under section 727(a)(2) as well as a knowing and fraudulent oath under section 727(a)(4)(A). The debtor there testified he thought his wife had title to the boat in her name. The court there found a failure to check constituted reckless indifference to the truth.

In the case at bar, Krich's numerous failures to timely disclose and his continuing concealments also constitute a knowing and fraudulent oath under section 727(a)(4)(A). It is a debtor's duty to fully and completely disclose assets so that any question can be resolved. Although reference to Krich's employment by Blue Moon was disclosed in the statement of affairs, there was no convincing evidence adduced to indicate that the failure to disclose the ownership interest of the Blue Moon stock was inadvertent. The same applies to the computer equipment, his interest in the bank account proceeds and the E.W. Wiley receivables.

The subsequent disclosure of only a part thereof on amendments filed six months after the case was filed is strong evidence of the continuing material concealment and omission. Defense counsel's arguments that the stock was of no substantial value, that the computer equipment was subject to an outstanding security interest in an amount exceeding the present value thereof, and the contention that the Palwaukee accounts were somehow the nondebtor spouse's sole property are insufficient excuses for Krich's concealments and nondisclosures. Such arguments do not absolve Krich from the ultimate responsibility as an experienced businessman and competent adult from his obligations to make full disclosure of the nature and extent of his assets, even those of questionable and perhaps marginal value.

Krich should have carefully read the schedules to make sure they were as complete and accurate as possible before he signed and filed same under pain of perjury. There is nothing in the record to attribute his failure to immediately disclose these assets as mere inadvertence. To the contrary, the Court can reasonably infer from the conduct of Krich and his spouse a continuing attempt to shield income and assets from the scrutiny of creditors, the trustee and the Court. Krich's actions do not constitute mitigating facts to support any finding of inadvertence or inattention but provide ample aggravating clear and convincing grounds for denial of discharge under section 727(a)(4)(A).

There is a compelling need for complete honesty and disclosure on the part of the debtor. *See In re Sullaway,* 66 B.R. 320, 322 (Bankr.D.Mass.1986). The Court, case trustee and creditors must be able, in light of the volume of filings and the need for expeditious administration of bankruptcy cases, to rely on the debtor's schedules and statement of affairs as having been prepared with scrupulous accuracy and honesty. A discharge is a privilege and not a right and therefore the strict requirement of accuracy is a small *quid pro quo.* The successful functioning of the Bankruptcy Code hinges upon the bankrupt's veracity and his willingness to make a full disclosure.

## VI. CONCLUSION

For the foregoing reasons, the Court does sustain Britton's objections thereto and hereby denies debtor Krich discharge. The Order of Discharge dated September 3, 1987, is vacated.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.