In re David Wayne MARTIN, Debtor.

John R. HILLIS, Plaintiff,

v.

David Wayne MARTIN, Defendant.

Barbara Diane MARTIN, Plaintiff,

v.

David Wayne MARTIN, Defendant.

Bankruptcy No. 89–40537.
Proc. Nos. 89–4052, 89–4053.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Lafayette.

Feb. 11, 1991.

John Hillis, Logansport, Ind., pro se.

Florence A. Briggs, Flora, Ind., for D. Martin.

Robert Justice, Logansport, Ind., for B. Martin.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Hell hath no fury like a woman scorned. Plaintiff, Barbara Diane Martin, is the defendant/debtor's former wife. They were divorced on July 31, 1989. The decree issued on that date required the debtor to pay her the sum of $9,214.88; hold her harmless from a debt in the approximate sum of $8,300.00, which was secured by a motor vehicle awarded to her; and pay $1,234.00 toward her attorney fees. Seven weeks after the entry of the divorce decree, debtor filed for relief under Chapter 7. He did so without having paid any part of the state court award.

This matter is before the court following trial of the issues raised by Barbara Martin's complaint and the complaint of her domestic relations attorney, John Hillis. By their complaints, plaintiffs have asked the court to determine whether or not debt-

or's obligations to them, which arise out of the state court dissolution decree, are dischargeable debts. Plaintiffs also object to the debtor's discharge, pursuant to 11 U.S.C. § 727. Because of the court's decision concerning the debtor's right to a discharge, we do not need to determine the question of dischargeability.

Section 727(a)(3) permits the court to deny a debtor's discharge if:

> the debtor has ... failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3).

"What constitutes adequate records must be decided on a case-by-case basis." *In re Sullivan,* 111 B.R. 317, 321 (Bankr.D.Mont. 1990); *In re Potter,* 88 B.R. 843, 848 (Bankr.N.D.Ill.1988).

The rationale behind the Section 727(a)(3) is that the privilege of a discharge is predicated upon a debtor's full disclosure of his financial condition and transactions; creditors are entitled to written evidence of a debtor's financial situation. *In re Hyder,* 38 B.R. 467, 471 (Bankr.D. Mass.1984), (citing *Broad National Bank v. Kadison,* 26 B.R. 1015 (D.D.N.J. 1983).

The type of financial information a debtor is required to keep is a function of its financial circumstances. The more complex one's financial situation, the more numerous and detailed one's records are supposed to be. *See Sullivan,* 111 B.R. at 321; *In re Becker,* 74 B.R. 233, 236 (Bankr. E.D.Tenn.1987). Conversely, a debtor whose financial affairs are relatively simple, is not expected to have maintained voluminous detailed records.

"As a general rule, books and records are sufficient if they permit the court and creditors to trace the debtor's financial dealings." *Potter,* 88 B.R. at 848; *In re Harron,* 31 B.R. 466, 468–69 (Bankr.D. Conn.1983); *In re Kottwitz,* 42 B.R. 566,

569 (Bankr.W.D.Mo.1984). A debtor "unsophisticated as to business records" and "not engaged in any business" is still expected to make available "[t]ax returns, pay stubs, and checking account statements." *Sullivan,* 111 B.R. at 321.

■ Debtor is employed by Chrysler Corporation as a factory worker and his financial dealings are relatively simple. He has no meaningful records. The debtor's lack of records for the time prior to November 1988 has been sufficiently explained. The parties separated at that time and most of the records which did exist were taken by debtor's wife and remain in her possession. Nonetheless, ten months passed between the date of separation and debtor's petition for relief under Chapter 7. During this time the debtor failed to keep or preserve the records which would be expected of him.

Although debtor maintained at least one, perhaps two and possibly three bank accounts during this period of time, he has no bank statements, checking account statements, or cancelled checks. While the debtor maintains a check register, it appears to be his practice to throw it away once it has been completely filled. Interestingly enough, debtor must have filled up a check register approximately one month after the date of the petition and discarded it at that time. He has no records concerning checks written prior to October 1989. As a result, while the debtor may have initially kept (in terms of generating) the records which would be expected of him, he has failed to preserve those records through his conscious practice of throwing them away. Especially in view of the post-petition destruction of his checking account records, this practice cannot be justified under all the circumstances of the case.

Where the destruction of pertinent financial records is unexplained, the debtor is not entitled to receive the benefits of a discharge. *Hyder,* 38 B.R. at 471, (citing *Rosenberg v. Bloom,* 99 F.2d 249 (9th Cir.1938); *In re Hirsch,* 14 B.R. 59 (Bankr.S.D.Fla.1981); *In re Lowe,* 25 B.R. 86 (Bankr.D.S.C.1982).

More significant than the debtor's record keeping practices is the challenge pursuant to § 727(a)(4). Plaintiffs contend that the debtor has, "knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A). This claim is based upon inaccuracies contained in the debtor's bankruptcy schedules and statement of affairs.

To deny a discharge under § 727(a)(4) requires that the debtor "(1) ... made a false oath or account in connection with his or her bankruptcy proceeding; and (2) that such false oath or account was knowingly and fraudulently made." *In re Martin,* 88 B.R. 319, 323 (D.Colo.1988) (citing *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984)).

■ "A material omission from the debtor's Chapter 7 schedules or a false answer on a statement of financial affairs may constitute a false oath for the purposes of § 727." *Martin,* 88 B.R. at 323.

A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects. *In re Sofro,* 110 B.R. 989, 991 (Bankr.S.D.Fla.1990) (citing *In re Burke,* 83 B.R. 716 (Bankr.D.N.D.1988); *In re Dias,* 95 B.R. 419 (Bankr.N.D.Tex.1988).

A matter is material "if it bears a relationship to the debtor's business transactions or estate, or concerns discovery of assets, business dealings or existence or disposition of [debtor's] property." *In re Montgomery,* 86 B.R. 948, 956 (Bankr.N.D.Ind. 1988) (citing *Chalik,* 748 F.2d at 618). This does not require that creditors be prejudiced by the false statements. *Montgomery,* 86 B.R. at 957; *In re Calder,* 93 B.R. 734, 738 (Bankr.D.Utah 1988), aff'd 907 F.2d 953 (10th Cir.1990). "[R]ather, the question of materiality depends on whether the false oath was pertinent to the discovery of assets or past transactions." *Montgomery,* 86 B.R. at 957 (aff'd 907 F.2d 953 (10th Cir.1990)).

The "knowingly and fraudulently" requirement of § 727(a)(4) "may be inferred from the debtor's conduct or from the particular circumstances of the case." *Ingersoll,* 106 B.R. at 292. *See also Martin,* 88

B.R. at 323; *In re Bujak*, 86 B.R. 30, 31 (Bankr.W.D.N.Y.1988); *Matter of Kilson*, 83 B.R. 198, 203 (Bankr.D.Conn.1988); *In re Krich*, 97 B.R. 919, 923 (Bankr.N.D.Ill. 1988); *Zahneis*, 75 B.R. at 203.

[A] reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may give rise to the level of fraudulent intent necessary to bar a discharge. *Martin*, 88 B.R. at 324 (quoting *In re Diodati*, 9 B.R. 804, 808 (Bankr.D.Mass.1981)). *See also Zahneis*, 75 B.R. at 203.

 The burden of proof under § 727(a)(4) is on the plaintiff. *In re Ingersoll*, 106 B.R. 287, 292 (Bankr.M.D.Fla. 1989); *In re Zahneis*, 75 B.R. 201, 203 (Bankr.S.D.Ohio 1987). Once plaintiff has satisfied its burden of proving that debtor's sworn oath was false, the burden shifts to the debtor to justify its actions. *In re Mukerjee*, 98 B.R. 627, 629 (Bankr.D.N.H. 1989); *Martin*, 88 B.R. at 321.

[T]he very purpose of ... 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction ... Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987).

 An examination of David Martin's schedules reveals several inaccuracies.

Schedule B–2 requires a debtor to identify, describe and value various items of personal property. Paragraph (b) relates to deposits of money with financial institutions. At the time the schedule was signed, debtor had at least one such account, a checking account, which contained no less than $100.00. Despite this, debtor stated "none". The statement is false.[1]

Debtor's statement of affairs contains significant omissions. Question 4(a) specifically asks the debtor to identify any bank accounts which he has maintained either in his own name or in connection with another person during the two years prior to the petition. Debtor answered this question "none." The answer is false. At the time the petition was filed, the debtor maintained a checking account and perhaps a savings account. It clearly appears from the testimony presented at trial that during the two years prior to the bankruptcy the debtor maintained at least one and perhaps two different bank accounts in his own name and yet a third account jointly with his wife. None of them were disclosed. This nondisclosure has been held sufficient to deny a debtor its discharge. *See Mukerjee*, 98 B.R. at 630.

Question 5(a) specifically asks whether or not debtor has kept any books of account or records with regard to his financial affairs during the two years prior to the filing of the original petition. Debtor affirmatively answered this question "no." As a result of this answer, the next two questions, which ask the debtor to identify whose possession such books and records are in and, if any of the books and records are not available to explain why, are answered "not applicable." Question 5(d), which asks about the destruction, loss or

---

**1.** Plaintiffs also contend that debtor has made a false oath by undervaluing his personal property on schedule B–2. This argument is based upon the great disparity between the scheduled values and the state court's determination of value in connection with the dissolution. The disparity is unfortunate and undoubtedly should have been disclosed or explained somewhere in the debtor's schedules or statement of affairs. Given the state court's recent determination of value and the valuation information available to the debtor at the time he signed the schedules, he undoubtedly took a calculated risk by using the much lower values that he did. Nonetheless, given the vagaries inherent in any statement of value, this court is not prepared to find that debtor's scheduled values are false. Indeed, the opinion given by plaintiff's own appraiser, Mr. Rhinehart, while differing from the debtor's as to individual items, places a value upon all of debtor's personal property that is less than the debtor's own values stated on schedule B–2.

disposition of records, was affirmatively answered "no." All four answers are false.

The debtor, at least initially, kept records concerning his financial condition in the form of bank statements, cancelled checks, and checking account ledgers. There were also other miscellaneous documents concerning various loans and other pre-petition transactions. The debtor not only knew that these records had been generated but that many of them, although not in his possession, were in the possession of his former wife. Indeed, one of the primary disputes in connection with the divorce had apparently involved the debtor's repeated complaints that he was not being allowed access to these records during the course of that proceeding. Consequently, although he may not have had possession of them, he knew these records existed and were in the possession of his former wife. This should have been affirmatively disclosed.

Given the manner in which debtor treated what few records he did manage to generate after the date of separation, question 5(d) required an answer which did more than deny that the debtor had destroyed or otherwise disposed of the records within the two years prior to the petition. Debtor had a conscious and routine practice of destroying the few financial records that would be generated concerning his affairs—bank statements, cancelled checks and check ledgers. Given this practice, a more thorough explanation was required beyond the affirmative denial of any destruction or other type of disposition.

Question 12(b) on the statement of affairs asks whether or not debtor has made any transfers, of any kind, of real or personal property during the year prior to the date of the petition. Debtor affirmatively answered "none." The answer is false. At a minimum, during the year prior to the petition, debtor had sold a motor vehicle and, in July of 1989, traded another vehicle for a boat. These two transfers are undisputed. There may have been more, the evidence is not clear. Nonetheless, debtor denied that any transfers took place.

Debtor's answer to question 14(a) is also false. This question asks whether or not debtor has suffered any losses from fire, theft, or gambling during the year prior to the petition and whether or not the loss was covered by insurance. Much of the evidence presented at trial dealt with the disposition or disappearance of numerous small items of personal property. In part, plaintiffs claim that the defendant has concealed or disposed of these items in an effort to keep them from his creditors. These items consist of such things as a camera, various kitchen appliances, tools, an elaborate car stereo system, and many others. Debtor contends that not only did he not dispose of them but that he has not had them since about the time of the parties' separation. Debtor does not know where these items are and is able to indicate only that they have somehow disappeared.

Despite the question of where these items are, it is clear that they were in existence at the time of the separation in November 1988. They were not taken by the debtor's former wife nor were they set-over to her by the state court. The court finds that she does not have them. As a result, we are accepting debtor's explanation that they have somehow mysteriously disappeared, presumably through theft or some other type of loss. This required the debtor to answer question 14(a) affirmatively and not to deny that any losses had occurred. Furthermore, approximately one month prior to the petition debtor was involved in a motorcycle accident. This casualty should also have been revealed and explained.

Debtor does not seriously deny that his schedules and statement of affairs are incorrect. Instead, it is debtor's position that the attorney who prepared them and initially filed this bankruptcy on his behalf (not the attorney who represented debtor at trial) did not do so properly. Debtor contends that he did not understand what was asked for by these and other questions on the statement of affairs and that their import was not explained to him by counsel. Furthermore, debtor also asserts that counsel

knew of some of the inaccuracies and omissions complained of but, nonetheless, prepared the answer as it was filed with the court.

■ The essence of debtor's defense to the objection to his discharge is that his former attorney committed malpractice and that this should excuse the inaccurate filings. This is not an excuse the court can accept. It is just too convenient. If we were to sustain such an uncorroborated defense, we would be opening the door to systematically inaccurate schedules and statements of affairs and then, once the inaccuracies are revealed, confront a veritable parade of debtors who, in defending their right to a discharge, place the blame not upon themselves but upon their former attorneys. At least in the absence of testimony from former counsel that information of this kind was fully revealed and then ignored or disregarded when the documents were prepared, such a defense cannot be permitted to succeed. *See Zahneis,* 75 B.R. at 204. The debtor chose his legal representative when he initiated this case and must accept the consequences of that choice, whether for better or for worse. *See Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 607–612 (7th Cir.1986); *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir.1986); *Inryco, Inc. v. Metropolitan Engineering Co., Inc.,* 708 F.2d 1225, 1233–1235 (7th Cir.1983).

Debtor could have avoided the situation complained of by giving the schedules and statement of affairs a more thorough review than he did when the documents were signed. He contends that they were handed to him by counsel's secretary who instructed him to sign them where required. He admits that he did so without a thorough review of the information given and without a clear understanding of what was asked for. The debtor "should have carefully read the schedules to make sure they were as complete and accurate as possible before he signed and filed same under pain of perjury." *In re Krich,* 97 B.R. at 924. There was no urgency surrounding the filing of these documents and the court cannot conceive of any reason why the debtor could not have delayed signing them in order to give them a thorough review and discuss his questions with counsel. Indeed, although the schedules and statement of affairs were signed in late August of 1989, they were not filed with the court until approximately three weeks later.

A debtor should not be able to evade responsibility for false statements which [it] has made under oath by claiming ... reliance on advice of counsel when it is within the debtor's ability to recognize the falsity of the statements [it] is attesting to. *In re Johnson,* 82 B.R. 801, 806 (Bankr.E.D.N.C.1988).

The debtor knew or, by a proper review of the documents as prepared, should have known that the answers given were false and misleading. Nonetheless, he signed them under penalties of perjury and permitted them to be filed on his behalf. If the ultimate responsibility for these knowing inaccuracies truly rests with his former counsel, the proper remedy is something other than to grant the debtor a discharge despite the falsehoods.

Looking at the cumulative nature of the responses, falsehoods, and omissions contained in the debtor's bankruptcy schedules and statement of affairs, it clearly appears that Mr. Martin is not entitled to the discharge which is given only to an honest debtor by the United States Bankruptcy Code. *Mukerjee,* 98 B.R. at 631. *See also In re Clawson,* 119 B.R. 851, 853 (Bankr.M. D.Fla.1990). The number and nature of the inaccuracies and falsehoods indicate debtor's complete and reckless indifference to the truth, which is the functional equivalent of a fraudulent intent. *Tully,* 818 F.2d at 112; *Martin,* 88 B.R. at 324; *Montgomery,* 86 B.R. at 957–60; *Johnson,* 82 B.R. at 805. As the court in *Krich* elaborated:

A discharge is a privilege and not a right and therefore the strict requirements of accuracy is a small *quid pro quo.* The successful functioning of the Bankruptcy Code hinges upon the bankrupt's veraci-

ty and his willingness to make a full disclosure. *Krich,* 97 B.R. at 924.

Judgment will be entered accordingly.