In re Donald L. YONKERS and Diane E. Yonkers, Debtors.

COLE TAYLOR BANK, Plaintiff,

v.

Donald L. YONKERS and Diane E. Yonkers, Defendants.

Bankruptcy No. 96 B 23330.
Adversary No. 97 A. 00213.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 9, 1997.

Darren L. Besic, Lombard, IL, for Plaintiff.

Frank C. Hernandez, Law Offices of Peter Francis Geraci, J.D., Chicago, IL, for Defendant.

Brenda Porter Helms, Raleigh, Helms & Finke, Chicago, IL, Trustee or Other Attorneys.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of Cole Taylor Bank (the "Bank") objecting to the discharge of Donald L. Yonkers and Diane E. Yonkers (collectively the "Debtors") pursuant to 11 U.S.C. § 727(a)(4)(A). For the reasons set forth herein, the Court hereby grants judgment in favor of the Bank as to Donald L. Yonkers, but not as to Diane E. Yonkers. Donald L. Yonkers' discharge is denied, and the Bank's objection thereto under 11 U.S.C. § 727(a)(4)(A) is sustained. Diane E. Yonkers' discharge shall issue forthwith. Each party shall bear their own attorneys' fees. Taxable costs allowable under 28 U.S.C. § 1920 are awarded to the Bank, who shall file its bill therefor within ten days hereafter.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J).

### II. FACTS AND BACKGROUND

Many of the facts are not in dispute, including the genesis of the relations between the parties. The Bank extended credit to the Debtors in the form of a debt consolidation loan. The Debtors expected to have preexisting credit card debt repaid from the loan proceeds at a lower interest rate with resulting lower monthly payments to be made to the Bank by the Debtors. The Debtors' overall financial situation, however, led them to subsequently file a Chapter 7 petition on September 5, 1996. Their petition was accompanied with Schedules, including their current income on Schedule I and current expenses on Schedule J. See Bank's Exhibit Nos. 1 and 2. They attended the 11 U.S.C. § 341 meeting of creditors and were examined under oath about their affairs by the interim case trustee and a representative of the Bank. See Bank's Exhibit No. 3. Thereafter, the Debtors filed amended Schedules I and J showing substantially lower income and expenses which purportedly corrected "clerical errors" to reflect adjustments in their income and expenses and post-petition sale of an automobile. See Bank's Exhibit Nos. 4 and 5.

On February 10, 1997, the Bank filed the instant adversary proceeding objecting to the Debtors' discharge based on 11 U.S.C. § 727(a)(4). The Bank alleges that the Debtors overstated their expenses, misstated and understated their income, and that Donald failed to disclose, list or schedule a second job and the income earned therefrom. The Debtors deny any dishonesty on their part and contend that some of their income is derived from working overtime, which is not certain; that they are not sophisticated in

financial matters, but honestly completed their Schedules based on their understanding and information available at the time; and the income from the second part-time job held by Donald was minimal, and though that employer was not specifically listed on either Schedule I, the income therefrom was averaged into the reported figures.

The only employer scheduled for both Debtors was Magnetrol International ("Magnetrol"). Donald's additional part-time employment at Midwest Sporting Goods was not disclosed on the Schedules; although he testified at the August 29, 1997 trial that his average monthly income from this employer was factored in to the reported income figures on the original and amended Schedule I. Those Schedules reflected his gross monthly income at $3,941.17 and $3,068.00 respectively and estimated his monthly overtime at $0.00. In comparison, the Magnetrol payroll records showed on Donald's W–2 annualized gross wages of approximately $45,716.09 for 1996. *See* Bank Exhibit No. 7. This sum averages out to approximately $3,809.67 per month. In addition, the 1996 payroll records from Donald's employment with Midwest Sporting Goods and the W–2 showed that he earned gross wages of $1,828.16 or an average of an additional $152.35 per month. *See* Bank's Exhibit No. 8. The average monthly income from those two employers totals $3,962.02, closer to the gross figure for Donald's income on the original Schedule I, but almost $900.00 per month greater than he reported on his amended Schedule I.

The respective gross income figures reported on Diane's original and amended Schedules I were $1,718.73 and $1,447.33 respectively, in contrast to her W–2 from Magnetrol that revealed that she earned gross wages for 1996 of $17,152.30, which is approximately $1,429.36 per month. *See* Bank's Exhibit Nos. 1, 2 and 7.

The other principal focus of the Bank's documentary evidence was on the Schedule J line item for monthly food expenses for the Debtors and their dependant child. The original Schedule J listed $700.00 for food per month, in contrast to the amended Schedule J, which showed $450.00 for same. The other reduced expenses relating to a car

sold postpetition accounted for the balance of the reduced figures on the amended Schedule J. At trial, Donald testified that their weekly food bills varied between those two figures. *See* Debtors' Group Exhibit No. 1. That exhibit consists of a series of cash register tapes from various area grocery stores from October, 1996, through March, 1997. These tapes show food and related items purchased by the Debtors ranging between $115.76—$196.52 per week. This variance was explained at trial and is within the range of amounts budgeted for food on the Schedules.

Donald further testified that he understood the need to make full disclosure of his income, but did not list his second part-time job with Midwest Sporting Goods because of his minimal earnings, which he tried to factor into the scheduled figures for Magnetrol. Moreover, at the time the original and amended Schedules were filed, Donald did not have his W–2 forms in hand.

Diane did not testify at trial. The only other witness who testified was the Bank's loan officer who made the debt consolidation loan. He admitted that at the time the loan was made he had no evidence that either Debtor intended to defraud or conceal anything relevant from the Bank, but he believed that the Debtors were continuing to use the credit cards after the loan was made, contrary to its terms and conditions.

### III. DISCUSSION

#### A. General Standards for Objections to Discharge

■ The discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. *Northern Trust Co. v. Garman (In re Garman),* 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). Consequently, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start. *Soft Sheen*

*Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 364 (Bankr.N.D.Ill.1988); *Filmar, Inc. v. White (In re White)*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986).

The Bank has the burden of proving the objections. Fed. R. Bankr.P. 4005. The ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff. *First Federated Life Ins. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983). The objector must establish all elements by a preponderance of the evidence. *See Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 n. 17 (4th Cir.1994); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992); *First Nat. Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir.1991); *see also Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991) (established preponderance of the evidence standard regarding dischargeability determinations under 11 U.S.C. § 523). Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt non-dischargeable. *See Johnson*, 98 B.R. at 367 ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor."). The Bank argues that the inaccuracies on the Schedules and Donald's failure to list his second job or testify about it at the creditors' meeting were knowing and fraudulent in connection with the case making a materially false oath.

Section 727(a)(4)(A) of the Bankruptcy Code provides as follows:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account

11 U.S.C. § 724(a)(4)(A). The purpose behind this subsection is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. *Bensenville Community Center Union v. Bailey (In re Bailey)*, 147 B.R. 157, 163 (Bankr.N.D.Ill.1992) (citations omitted).

In order to prevail, the Bank must establish five elements under § 727(a)(4)(A):

(1) the Debtors made a statement under oath; (2) the statement was false; (3) the Debtors knew the statement was false; (4) the Debtors made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *Bailey*, 147 B.R. at 162; *MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 880 (Bankr. S.D.N.Y.1990). If made with the requisite fraudulent intent, a false statement, whether made in the schedules or orally at a creditors' meeting, is sufficient grounds for denying a discharge provided it was knowingly made and is material. *Armstrong v. Lunday (In re Lunday)*, 100 B.R. 502, 508 (Bankr. D.N.D.1989).

Section 727(a)(4) ensures that debtors will provide reliable information to parties with an interest in the administration of the estate. *Britton Motor Service, Inc. v. Krich (In re Krich)*, 97 B.R. 919, 923 (Bankr. N.D.Ill.1988). It is a debtor's role to consider the questions posed on the schedules and at the creditors' meeting carefully, and answer them accurately and completely. *Lunday*, 100 B.R. at 508.

**B. *Application of the Standards to this Matter***

The Bank first must establish that the Debtors made a statement under oath. A debtor's petition and schedules constitute a statement under oath for purposes of a discharge objection under § 727(a)(4). *See Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr.S.D.N.Y.1994); *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr.E.D.Ark.1993). A statement under oath also includes statements made by the debtor when being examined at creditors' meetings. *See Nerco Coal Corp. v. Ball (In re Ball)*, 84 B.R. 410, 415 (Bankr.D.Md.1988). There is no dispute that this element has been met.

Second, the Bank must show that such statements were false. Whether the Debtors made a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir.1987); *Continental Ill. Nat. Bank & Trust Co. of Chicago v. Ber-*

nard (In re Bernard), 99 B.R. 563, 570 (Bankr.S.D.N.Y.1989). "Filing of false schedules with material omissions or misrepresentations with an intent to mislead creditors and the trustee as to a debtor's actual financial condition constitutes a false oath under section 727(a)(4)(A)." *Krich*, 97 B.R. at 923 (citation omitted). A debtor's failure to disclose income may warrant denial of discharge. *See First Fed. Savs. and Loan Ass'n of Raleigh v. Johnson (In re Johnson)*, 82 B.R. 801, 805 (Bankr.E.D.N.C.1988) (citations omitted).

 The Court finds that the Bank has established the second element with respect to Donald based on his failure to disclose his second source of income—Midwest Sporting Goods—on either the Schedules or at the creditors' meeting. A debtor's omission of income on his bankruptcy schedules constitutes a false oath or account. *See, e.g., Calder v. Job (In re Calder)*, 907 F.2d 953, 955 (10th Cir.1990); *Walton v. Staub (In re Staub)*, 208 B.R. 602, 605–06 (Bankr.S.D.Ga. 1997); *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr.S.D.N.Y.1994); *Miller v. Boles (In re Boles)*, 150 B.R. 733, 736–37 (Bankr.W.D.Mo.1993); *Grant v. Peacock (In re Peacock)*, 154 B.R. 597, 601 (Bankr. M.D.Fla.1993); *Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879, 883 (Bankr.N.D.Fla. 1993).

 There is no similar problem regarding Diane. Moreover, there was no evidence adduced at trial that she falsified the Schedules regarding her income or expenses or that she was asked any questions at the creditors' meeting to which she gave false answers under oath. A spouse's failure to disclose will not be automatically imputed to the other spouse because each has an independent duty to disclose all of his or her assets and liabilities, notwithstanding the Bankruptcy Code's provision which allows spouses to file a joint case. *See* 11 U.S.C. § 302. Each joint debtor has a separate estate unless the two estates are substantially consolidated under § 302(b). *See Ageton v. Cervenka (In re Ageton)*, 14 B.R. 833 (9th Cir. BAP 1981). Thus, the Bank has not demonstrated this element as to Diane.

Third, the Bank must establish that the Debtors knew that the statement was false. The form Schedule I requires debtors to list all current employers, not just those selected by the debtor. Neither the original nor the amended Schedule I referenced Donald's part-time employment with Midwest Sporting Goods. The obvious impression created when reviewing those Schedules was that he had but one employer—Magnetrol. This omission was a false statement by Donald that he knew was false. Hence, the Court finds that the Bank has demonstrated this element by a preponderance of the evidence. No such evidence was presented, however, regarding Diane as to this element.

 Fourth, the Bank must prove that the Debtors made the statements with fraudulent intent. To find the requisite degree of fraudulent intent, the Court must find that the Debtors knowingly intended to defraud the Bank or engaged in behavior which displayed a reckless disregard for the truth. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir.1992); *Bailey*, 147 B.R. at 165. If a debtor's bankruptcy schedules reflect a "reckless indifference to the truth" then the party seeking denial of the discharge need not offer any further evidence of fraud. *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 355 (Bankr.N.D.Ill.1988). The requisite intent under § 727(a)(4)(A) may be inferred from circumstantial evidence. *Yonikus*, 974 F.2d at 905; *Bailey*, 147 B.R. at 165; *Krich*, 97 B.R. at 923. However, discharge should not be denied where the untruth was the result of mistake or inadvertence. *See Lanker v. Wheeler (In re Wheeler)*, 101 B.R. 39, 49 (Bankr.N.D.Ind.1989). The misstatement or omission must have been made knowingly and fraudulently; mere negligence is not sufficient to deny discharge to debtors. *Bernard*, 99 B.R. at 570. A discharge will not be denied if the debtor made the false oath inadvertently, carelessly, or under a mistaken belief. *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948, 957 (Bankr.N.D.Ind.1988). By signing the last page of the Schedules and Statement of Financial Affairs, the Debtors certified that they read each document and that they were true and correct to the best of their knowledge. Donald's failure to disclose a source of

income from a second employer from whom he was regularly receiving some income, albeit small, yet purporting to include those dollars as part of the income from the disclosed principal employer, is beyond mere negligence and unintentional distortion of the true facts on his part, especially when same could have been revealed in the amended Schedule I or at the first meeting of creditors. After all, debtors are afforded a virtually unfettered right to amend their schedules as a matter of course under Fed. R. Bankr.P. 1009(a) at any time before their case is closed. Donald's omission was at least a "reckless indifference to the truth." Accordingly, the Bank has demonstrated this element as to Donald, but not Diane.

Finally, the Bank must show that the false statement related materially to the bankruptcy case. The debtor's false oath must relate to a material matter before it will bar a discharge in bankruptcy. *Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir.1987). The test for materiality of the subject matter of false oath is whether it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Bailey*, 147 B.R. at 162 (citations omitted). A false oath may be material even though it does not result in any detriment or prejudice to the creditor. *Scimeca v. Umanoff*, 169 B.R. 536, 543 (D.N.J.1993), *aff'd*, 30 F.3d 1488 (3d Cir.1994); *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 881 (Bankr.S.D.N.Y.1994). A matter is material if it is pertinent to the discovery of assets, past transactions, or the debtor's entitlement to discharge. *Richter v. Gordon (In re Gordon)*, 83 B.R. 78, 81 (Bankr.S.D.Fla. 1988). The Court finds that the failure to list a source of income earned from part-time employment on the bankruptcy schedules constitutes a false statement by omission which relates to a material matter.

In sum, the Court finds that the Bank has shown by a preponderance of the evidence each element under § 727(a)(4)(A) as to Donald. Therefore, the Court denies Donald a discharge. The Bank has failed to meet all of the requisite elements, however, as to Diane. Consequently, her discharge shall not be denied.

### C. *Whether the Bank is Entitled to Attorneys' Fees and Costs*

Each party seeks costs and attorneys' fees from their opponent. The Bank's cause of action is based on § 727(a)(4)(A). Section 727, however, does not specifically authorize the Court to award attorneys' fees. Because the remedy created by the Bankruptcy Code for denial of discharge does not give the Bank a statutory right to attorneys' fees, and there is no contract between the parties introduced into evidence which provides for same, the Court declines to tax the Debtors with attorneys' fees. The Court will adhere to the "American Rule," which provides that in cases that are based upon or involve federal law, attorneys' fees are not allowable absent a statutory basis or enforceable contract between the parties. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). The general rule applies to litigation in the bankruptcy courts. *See In re Reid*, 854 F.2d 156, 161–62 (7th Cir.1988) (claim for attorneys' fees based on wrongful appointment of interim trustee in involuntary case). This result is consistent with other courts' views on this issue. *See Vandenbogart v. Minesal (In re Minesal)*, 81 B.R. 477, 482 (Bankr.E.D.Wis.1988); *Palmisano v. Leslie (In re Leslie)*, 44 B.R. 208, 209 (Bankr. D.Vt.1984). Taxable costs allowable under 28 U.S.C. § 1920 are awarded to the Bank, who shall file its bill therefor within ten days hereafter.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby grants judgment in favor of the Bank as to Donald L. Yonkers, but not as to Diane E. Yonkers. Donald L. Yonkers' discharge is denied and the objection thereto under 11 U.S.C. § 727(a)(4)(A) is sustained. Diane E. Yonkers' discharge shall issue forthwith. Each party shall bear their own attorneys' fees. Taxable costs allowable under 28 U.S.C. § 1920 are awarded to the Bank, who shall file its bill therefor within ten days hereafter.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.