In re Henry D. SAYLOR, Ronda
L. Saylor, Debtors.

Mark Warsco, Trustee, Plaintiff,

v.

Henry D. Saylor, Ronda L.
Saylor, Defendants.

Bankruptcy No. 04–14769.
Adversary No. 05–1052.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 28, 2006.

Grant F. Shipley, Fort Wayne, IN, for Debtors.

Mark A. Warsco, Fort Wayne, IN, trustee.

### DECISION ON REVOCATION OF DISCHARGE

ROBERT E. GRANT, Bankruptcy Judge.

Debtors' bankruptcy schedules and statement of affairs are materially false. That is not and cannot be denied. The issue before the court is what to do about those falsehoods and, in particular, whether the debtors are sufficiently responsible for them so that their discharge should be revoked, *see*, 11 U.S.C. § 727(d)(1), because they "knowingly and fraudulently ... made a false oath [in connection with the case.]" 11 U.S.C. § 727(a)(4). That question is before the court following trial in this adversary proceeding.

The intent necessary to deny or revoke a discharge must be actual fraud. *In re Montgomery*, 86 B.R. 948, 957 (Bankr.N.D.Ind.1988). Nonetheless, actual knowledge that a statement is false and a conscious intent to deceive are not always required. The requisite fraudulent intent also exists where the debtor has demonstrated a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy" regarding statements made under penalties of perjury. *In re Martin*, 88 B.R. 319, 324 (D.Colo.1988) (quoting *In re Diodati*, 9 B.R. 804, 808 (Bankr.D.Mass.1981)). Thus, a debtor's reckless disregard for the truth of the information contained in its bankruptcy statements and schedules is sufficient to bar a discharge and may be regarded as the equivalent of actual fraud on the part of a debtor who submits false or inaccurate information. *Montgomery*, 86 B.R. at 957. *See also*, *In re Yonikus*, 974 F.2d 901, 905 (7th Cir.1992); *In re Tully*, 818 F.2d 106, 112 (1st Cir.1987). Reckless disregard means "not caring whether some represen-

tation is true or false...." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). *See also, In re Diodati*, 9 B.R. 804, 809 (Bankr.D.Mass.1981)(quoting *Le Lievre v. Gould*, 1 Q.B. 491, 498 (1893)). If the bankruptcy schedules reflect such an indifference to the truth then no further evidence of fraud is necessary. *In re Costello*, 299 B.R. 882, 900 (Bankr.N.D.Ill.2003); *In re Calisoff*, 92 B.R. 346, 355 (Bankr. N.D.Ill.1988).

The debtors previously owned and operated a Saylor's Hometown Pizza in Garrett, Indiana. On September 28, 2004, less than a month before filing bankruptcy, they sold this business to Shannon Williams for $8,000 cash, a 1999 Cadillac, and a 2002 Yamaha motorcycle. None of this—not the business, not the sale, not the cash, not the car or the motorcycle— was disclosed in the debtors' schedules or statement of affairs. The trustee learned about the transaction through a phone call from the buyer's attorney after the debtors sued Mr. Williams for allegedly breaching the contract and illegally retaking possession of the automobile.

The debtors do not deny that their schedules and statement of affairs are incorrect. Instead, it is their position that the attorney who filed the bankruptcy on their behalf[1] failed to properly assist them. Other than to deliver the money for counsel's fees, the debtors never met with their bankruptcy attorney. Whatever assistance they received came from counsel's staff and this amounted to little more than completing a questionnaire and being told where to sign the bankruptcy documents that were prepared using that information. Beyond this, the debtors never met or talked with anyone in counsel's office concerning the bankruptcy process, the information that was supposed to be included in the schedules and statement of affairs, or the questions they may have had concerning any of this. Furthermore, neither debtor completed high school and, because of their lack of education, in many instances claim they did not understand what was being asked of them. They argue that they relied upon their attorney and his staff to advise them and to guide them through the process and to see that the documents were properly prepared, and had counsel been more attentive the mistakes complained of could have been avoided. Thus, it is counsel's fault that the information in the schedules and statement of affairs is not correct and, given the debtors' lack of formal education, the failure to disclose the sale of their business or the property they received for it does not rise to the level of misconduct necessary to revoke their discharge.

■ Where a discharge is challenged based upon a false oath, the argument is sometimes made that the debtors acted upon advice they received from their bankruptcy attorney; thus the falsehood was not fraudulent. *See e.g., In re Dawley*, 312 B.R. 765, 787 (Bankr.E.D.Penn.2004); *In re Montgomery*, 86 B.R. 948, 959–60 (Bankr.N.D.Ind.1988). *See also, In re Martin*, 124 B.R. 542, 546–47 (Bankr. N.D.Ind.1991). Here, however, the debtors assert precisely the opposite: that their statement of affairs and schedules are not accurate because they received no advice from their attorney. The essence of this defense is that their bankruptcy attorney was ineffective and that this should excuse the inaccurate filings. While the court can readily see how the debtors' troubles might have been avoided if their attorney had been more attentive

---

1. In this adversary proceeding the debtors are not represented by the same attorney who filed their underlying bankruptcy.

or if they had been more fully advised, the defense they offer is not an acceptable one. There is no "right to effective assistance of counsel in a civil case." *Watson v. Moss,* 619 F.2d 775, 776 (8th Cir.1980).

"[T]he law in this circuit is that an attorney's conduct must be imputed to his client in *any* context." *U.S. v. DiMucci,* 879 F.2d 1488, 1496 (7th Cir.1989)(emphasis original).

> Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either. *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir.1986).

The debtors chose their legal representative and, for better or for worse, must accept the consequences of that choice. *See, Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 607–12 (7th Cir.1986); *Inryco, Inc. v. Metro. Engineering Co., Inc.,* 708 F.2d 1225, 1233–35 (7th Cir.1983); *Martin,* 124 B.R. at 547. If their attorney truly is to blame for the falsehoods in the schedules and statement of affairs, allowing that to change the outcome of this litigation is not the proper response. *Magala v. Gonzales,* 434 F.3d 523, 525–26 (7th Cir.2005); *U.S. v. 7108 West Grand Avenue,* 15 F.3d 632, 633 (7th Cir.1994).

Taking the debtors at their word and accepting their explanations for the falsehoods, the best that can be said on their behalf is that they were recklessly indifferent to the truth of the information they provided. For example, they both testified that they do not know what a transfer is and so did not understand the questions put to them either in connection with completing the statement of affairs or at the meeting of creditors, and this is why their response is not correct. In other words, the debtors did not know what was being asked of them, knew they did not know and, yet, answered anyway—without disclosing their lack of understanding or asking for any type of clarification or explanation. An answer given under these circumstances is a classic example of "not caring whether some representation is true or false...." *Chavin,* 150 F.3d at 728. Similarly, the debtors testified that they were allowed to sign the statement of affairs and schedules without having read them. The documents were simply handed to them by someone at counsel's office who instructed them where to sign and the debtors did so; they signed the documents without any effort to study them, verify their accuracy, or question the information they contained. This too demonstrates a reckless disregard for their accuracy. *See, In re Olbur,* 314 B.R. 732, 746 (Bankr.N.D.Ill. 2004); *In re Bren,* 303 B.R. 610, 614 (8th Cir.BAP2004); *In re Sims,* 148 B.R. 553, 557 (Bankr.E.D.Ark.1992).

Ultimately, it is debtors who are responsible for the accuracy of the information contained in their bankruptcy schedules and statement of affairs, *Dawley,* 312 B.R. at 787; it is it they who have the duty to carefully consider all of the questions posed and to see that they are completely and correctly answered. *See, In re Sofro,* 110 B.R. 989, 991 (Bankr. S.D.Fla.1990) (citing *In re Burke,* 83 B.R. 716 (Bankr.D.N.D.1988)). *See also In re Dias,* 95 B.R. 419, 424 (Bankr.N.D.Tex. 1988); *In re Diodati,* 9 B.R. 804, 808 (Bankr.D.Mass.1981). While the court cannot prevent debtors from taking a recklessly indifferent approach toward the information they provide, should information

which they have sworn to be true and correct prove to be materially false, debtors must accept the risks which come from that indifference. The debtors here clearly gave insufficient consideration to the questions they were asked and were recklessly indifferent to the truth of the information contained in their bankruptcy schedules and statement of affairs. *Chavin*, 150 F.3d at 728; *Tully*, 818 F.2d at 112; *In re Martin*, 88 B.R. 319, 324 (D.Col.1988); *In re Montgomery*, 86 B.R. 948, 957–60 (Bankr.N.D.Ind.1988); *In re Johnson*, 82 B.R. 801, 805 (Bankr. E.D.N.C.1988). Their discharge should be revoked and a judgment doing so will be entered.